J. W. BOZEMAN AND R. E. BOZEMAN, COPARTNERS DOING BUSINESS AS BOZEMAN BROTHERS, W. E. BOZEMAN AND T. S. BISSEY, *Appellants*, v. THE CITY OF ST. PETERSBURG, A MUNICIPAL CORPORATION, AND THE ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Appellees*.

## Opinion Filed November 15, 1917.

1. When the property rights of an individual are specially injured by an unlawful obstruction in a public street or highway, and no adequate remedy at law is afforded, he may have the aid of a court of equity in removing such unlawful obstruction.

2. If such obstruction merely interferes with the right of passage, common to all citizens, and no individual rights are specially or peculiarly injured, the remedy is through the proper public authorities.

3. An individual cannot enjoin the obstruction of a public street unless some special damage to his property or injury to him different not only in degree but in kind from the damage sustained by the community at large is threatened.

4. Held upon the case stated in the bill of complaint in this case that the complainants may not maintain this suit, the injury alleged to have been sustained by them being different in degree and not in kind, from that sustained by the

community at large, and that the remedy for the alleged un-
lawful obstruction is therefore through the proper public
authorities.

Appeal from Circuit Court for Pinellas County, O. K.
Reaves, Judge.

. Order affirmed.

*H. S. Hampton* and *H. S. Phillips,* for Appellants;

*Sparkman & Carter,* for Appellees.

WEST, J.:—By this suit the appellants, complainants
below, challenge the validity of an ordinance of the City
of St. Petersburg, one of the appellees, whereby certain
streets of said city were vacated and closed as public
streets, and the land upon which the streets so vacated
and closed was located, was granted to the appellee
Atlantic Coast Line Railroad Company for depot pur-
poses, and the right of said railroad company to occupy
said location with its freight depot pursuant to the
provisions of said ordinance.

The material averments of the bill of complaint are
briefly stated in substance, as follows: that the *locus in
quo* was duly dedicated as public streets of said city of
St. Petersburg, that the dedication was accepted by the
city and said streets were used by the complainants and
the public generally as public streets; that the said city
by its city council on August 4th, 1904, passed and adopted
ordinance numbered seventy-three (73) whereby the fol-
lowing portions of Eighth Street and First Avenue were
vocated and closed as public streets, and the area so
vacated was granted to the Atlantic Coast Line Railroad

Company for private uses: "Beginning at the southeast corner of the intersection of said First Avenue South with said Eighth Street, and running thence North across said First Avenue and along the eastern boundary of said Eighth Street to the Southeast corner of the intersection of said Eighth Street with the alley 100 feet North from the North east corner of the intersection of said First Avenue and Eighth Street; thence in a westerly direction across said Eighth Street to a point 100 feet North from said First Avenue where an alley intersects with said Eighth Street; thence in a Southerly direction along the western boundary of said Eighth Street to said First Avenue South; thence continuing south across said First Avenue to the Southwest corner of the intersection of said Eighth Street with said First Avenue; thence east across said Eighth Street to point of beginning;" that said city had no power, right or authority to make said grant, or to convey said portions of said streets to said Railroad Company, and that said attempted conveyance was *ultra vires* and a fraud upon complainants and all others similarly situated.

It is further averred that at the time of the passage of said ordinance the said railroad company owned in fee simple Lots 75 and 76 of Ward and Baum's Addition to St. Petersburg abutting on the east and west sides of said Eighth Street at the point so vacated and closed, and that said railroad company in the early part of the year 1905 erected its freight depot across said Eighth Street between said Lots 75 and 76, completely closing said street; that it used said depot continuously until the year 1913, when it moved said depot which was a wooden structure, west on to the property owned by it, with the declared intention of erecting upon the same

site a brick depot, and immediately commenced the erection of said brick depot; that said building is partially constructed, the walls being completed to a height of about three feet; "that no part of said brick depot extends into First or Railroad Avenue, but will be entirely in Eighth Street, but not beyond the boundary of said Lots 75 and 76, when completed;" that if said depot is completed said Eighth Street will be closed and the complainants and the public generally will be prevented from entering said First Avenue by way of said Eighth Street, and that said freight depot constitutes not only a public nuisance, but also a private nuisance to complainants.

It is then averred that the complainants Bozeman Brothers own Lots 7, 8 and 9 of Block 42, according to the map of said city, and have had located thereon since the year 1910 a retail grocery store, a retail electric supply business and warehouse, and an ice cream factory; that at the time they purchased said lots they knew that a wooden freight depot was located in said Eighth Street and that it closed said street; that as a result of said street's being closed the said Bozeman Brothers suffer injuries and damages unlike those suffered by the general public in that, in order to reach a large percentage of their customers, the post office and other public buildings, they must "surround said depot either by going out to Ninth Street and around to Seventh Street, by way of Second Avenue South, as shown on said map of said city hereto attached, or by going to Ninth Street and thence to Central Avenue, as shown on said map, thereby forcing said Bozeman Brothers to go to a circuitous and inconvenient way, as well as a much longer way, in delivering their goods," etc.; that the bulk of the population and business center of said city is to the northeast of said place of business of said

Bozeman Brothers; that the closing of said street makes it impossible for their customers and others who would become their customers to reach their places of business by way of said street; that the closing of said street prevents their customers and others who would become customers from driving in front of their said places of business for the reason that said First Avenue South is so monopolized by the tracks of said railroad company that vehicles cannot turn round in front of said places of business, all of which results in a loss of business to said complainants, and causes a great depreciation in the value of their property.

Other averments are contained in said bill to the effect that said complainants wish to improve their property and lay a sidewalk in front of it so that it may be of easier access, thereby increasing their business and enhancing the value of their property, but that it is useless to do so as long as said streets are closed as aforesaid.

The allegations of the bill as to the other complainants are to like effect, and present no question different in principle from that presented by the case of these complainants.

The prayer is that the ordinance be cancelled and declared to be null and void; that the deed of conveyance, if any had been executed pursuant to the provisions of said ardinance, be cancelled and declared to be null and void, and that the said railroad company be enjoined and restrained from erecting and maintaining a freight depot upon the portions of said streets described in said ordinance.

To the bill of complaint the following demurrer was filed by the defendant Atlantic Coast Line Railroad Company:

"This defendant, by protestation, not confessing or acknowledging all or any of the matters or things in the said bill of complaint contained to be true, in such manner and form as the same are therein and thereby set forth and alleged, demurs to said bill, and for cause of demurrer shows:—that,

"1. There is no equity in said bill.

"2. The City of St. Petersburg, under its charter, had a right to pass ordinance No. 73, and the Railroad Company had the right to erect the building complained of under and by virtue of the said Ordinance No. 73.

"3. The bill of complaint shows on its face that the complainants in said cause acquired the lands owned by them long subsequent to the passage of the Ordinance No. 73, and long subsequent to the time that Eighth Street had been entirely closed by the freight depot of the defendant company.

"4. The bill of complaint fails to show on its face that the complainants, or either of them, will suffer any damage different from that suffered by the general public of St. Petersburg, by reason of the passage of Ordinance No. 73, or by reason of the erection of the building by the defendant.

"5. It is apparent upon the face of the bill that the complainants are not entitled to an injunction by reason of their gross laches.

"6. It appears by the bill of complaint that the defendant was the owner of the lands on each side of that portion of Eighth Street which was closed by the City of St. Petersburg by Ordinance No. 73, on August 4th, 1904, and by the closing of said street between said lands, the legal title thereof vested in the defendant.

"7. It appears by the bill of complaint that the complainants have an adequate and complete remedy at law."

342          SUPREME COURT OF FLORIDA.

Bozeman et al. v. The City of St. Petersburg—Opinion of Court.

Upon a hearing before the Circuit Judge the demurrer was sustained and the bill of complaint was dismissed, and this appeal is from the order sustaining the demurrer and dismissing the bill.

The only error assigned in this order of the Circuit Judge.

Two questions are presented by this appeal, which may be stated as follows: (1) Has the City of St. Petersburg the power and authority to adopt a valid ordinance of this kind, and if so, (2) is it made to appear from the averments of their bill that the complainants are in position to raise this question and present it so that it may be passed upon and determined in a suit of this kind.

We will consider these questions in the inverse order, because if it is found that the complainants are not in position to question in a suit of this character, the exercise of this power by the City of St. Petersburg, it follows necessarily that the question of whether or not the city possesses such power is not before us.

The controlling principles of law in cases of this kind are well established. The difficulty is in applying these principles to the facts of the case presented to the court for adjudication.

This court has held that when the property rights of an individual are specially injured by an unlawful obstruction in a public street or highway and no adequate remedy at law is afforded he may have the aid of a court of equity in removing such unlawful obstruction (Brown v. Florida Chautauqua Ass'n., 59 Fla. 447, 52 South. Rep. 802); but if such obstruction merely interferes with the right of passage common to all citizens and no individual rights are specially or peculiarly injured the relief from such unlawful obstruction should

be through the proper public authorities. Garnett v. Jacksonville, St. A. & H. R. R. Co., 20 Fla. 889; Jacksonville, T. & K. W. Ry. Co. v. Thompson, 34 Fla. 346, 16 South. Rep. 282; Thomas v. Wade, 48 Fla. 311, 37 South. Rep. 743.

In the case of Robbins v. White, 52 Fla. 613, 42 South. Rep. 841, this court in a case similar to this laid down the rule as follows: "If the alley or street is a public highway which cannot be, or has not been, lawfully abolished, and the complainant is an abutting property owner, she may enjoin the obstruction of the alley or street if some damage to her property differing in kind from that of the public is threatened by the obstruction. The obstruction of a public street is a public nuisance, but it may also constitute a private nuisance. An individual cannot enjoin the obstruction of a public street unless some special damage to his property or injury to him differing not only in degree but in kind from the damage sustained by the community at large is threatened." In the case of Jacksonville, T. & K. W. Ry. Co. v. Thompson, *supra,* this court said: "The allegation that the plaintiff's property abuts upon the public road which, at some portion of the same, is obstructed, does not change the rule. If by proximity to the road he has occasion to use the same oftener than other citizens, he only suffers damage to a greater degree, but not of a different kind, to that sustained by all others who have occasion to travel the road;" and in the case of Garnett v. Jacksonville, St. A. & H. R. R. Co., *supra,* the court speaking through Mr. Justice WESTCOTT, stated the rule as follows: "We will not stop to discuss the question, but will simply say that it is the settled law here and elsewhere that an individual cannot recover damages at law, or have relief in equity, against even

an admitted public nuisance unless he makes a case of special and particular injury to himself. He must sustain an injury not common to the public.

"The gist of the action, the gravamen of the complaint, is the special and particular injury. For the common injury there can be no redress, save by some authorized action in behalf of the people."

Now, applying these principles, can it be said that the allegations of the bill, which are well pleaded and admitted by the demurrer to be true make out a case showing such special injury to the complainants, different not only in degree but in kind, from that sustained by the public generally, as to warrant the interposition of a court of equity in a suit brought in the name and on behalf of such complainants? The streets authorized by the city ordinance complained of to be closed are First Avenue South running east and west, and Eighth Street running north and south, where the avenue and street intersect and cross, and one hundred feet of said Eighth Street north of said First Avenue South where said street extends north between Lot 75 on the east side of said street and Lot 76 on the west side of said street. It does not appear that First Avenue South has been obstructed, and it is distinctly averred, as we have seen, that the depot in process of construction "will be entirely in Eighth Street, but not beyond the boundary of said Lots 75 and 76 when completed," and that said lots are owned by the defendant railroad company.

The property of the complainants Bozeman Brothers, as it appears from the maps of said city attached as exhibits to the bill of complaint, is Lots 7, 8 and 9 of Block 42, facing and abutting First Avenue South lying west of the point where said avenue and said Eighth Street cross and where said obstruction in said street

is located. The property of the complainant W. E. Bozeman is Lot 6 in Block 42 adjoining the property of Bozeman Brothers, while the property of the other complainant T. S. Bissey is Lot 132 located at the southeast corner of the intersection of Eighth Street and Central Avenue. It appears from the maps that this lot abuts Central Avenue (which is the avenue north of and parallel to First Avenue South) from the south and Eighth Street from the west, and that there is an alley between this lot and Lot 75 owned by the appelle railroad company.

That the location of numerous other lots, with reference to said obstruction, is similar to the location of the lots of these complainants with reference to such obstruction is apparent, and it is clear we think that the damage sustained by the complainants because of such obstruction, is not different in kind from the damage sustained by the community at large. It is true that complainants are denied the use of the street so obstructed, but their properties are accessible from other streets. It is likewise true that the public generally are denied the use of such street. If therefore there is a difference in the damage sustained, it is in degree. In such a case, as we have seen, the remedy is through the proper public authorities.

In the case of Brown v. Florida Chautauqua Association, *supra*, it was held that the averments of the bill showed "special, peculiar, particular and substantial injury to the complainants," because of the natural relationship of the hotel business in which they were engaged, to the passenger depot; and the inconvenience and increased risk, in being forced, because of the unlawful obstruction there complained of, to use a more dangerous and longer route which crossed the railroad track

twice, or else to use a still more circuitous route to the depot from the hotel, and upon that ground the jurisdiction in equity at the suit of the complainant was upheld. But that case is clearly distinguishable from this, because here special and peculiar injury to complainants different in kind from that sustained by the general public is not made to appear by the averments of the bill.

Having reached this conclusion, it follows that the power of the city to adopt the ordinance complained of cannot be tested in a suit at the instance of these complainants, and that no reversible error was committed by the court below in sustaining the demurrer and dismissing the bill of complaint.

Order affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.