711 So.2d 1230 (1998)
HARBOR BEACH SURF CLUB, INC., Appellant,
v.
WATER TAXI OF FT. LAUDERDALE, INC., a Florida corporation, Appellee.
No. 96-3122.
District Court of Appeal of Florida, Fourth District.
May 13, 1998.
Rehearing, Clarification and Certification Denied July 1, 1998.
*1231 Peter G. Herman and Michele K. Feinzig of Tripp, Scott, Conklin & Smith, Fort Lauderdale, for appellant.
John D. Kallen of Badiak, Will & Kallen, North Miami Beach, for appellee.
POLEN, Judge.
Harbor Beach Surf Club, Inc. (Harbor Beach) appeals a final judgment requiring it to modify its existing footbridge over Lake Mayan to accommodate vessels owned by plaintiff Water Taxi of Fort Lauderdale, Inc. (Water Taxi). Water Taxi filed suit against Harbor Beach seeking abatement of an alleged public nuisance. Water Taxi asserted it was unable to navigate its vessels under Harbor Beach's footbridge and thus unable to provide service to visitors of the Harbor Beach Marriott or residents of the Mayan Marco Apartments, resulting in lost revenue. It was uncontradicted Harbor Beach's footbridge does not obstruct all navigation across Lake Mayan, and only larger boats are obstructed from passing under the footbridge.
The trial court determined Lake Mayan was a navigable waterway. It found the right to navigate Lake Mayan paramount to Harbor Beach's ownership of land on either side or beneath the lake. It found Harbor Beach's footbridge constituted an unreasonable obstruction and a nuisance, concluding Water Taxi suffered a harm that differed from the harm suffered by the general public, in that Water Taxi suffered a loss of revenue from its inability to navigate under the footbridge. We affirm the final judgment.
The first two of Harbor Beach's four arguments on appeal concern federal preemption and exhaustion of administrative remedies. We disagree with Harbor Beach's contention that federal law preempts state law as to determinations of navigability, such that the circuit court was without jurisdiction *1232 to determine the navigability of Lake Mayan. Florida courts consistently determine the issue of the navigability of waterways in several different contexts: Board of Trustees of Internal Improvement Trust Fund v. Florida Public Utilities Co., 599 So.2d 1356 (Fla. 1st DCA 1992) (determining navigability in context of suit to quiet title); Picciolo v. Jones, 534 So.2d 875 (Fla. 3d DCA 1988) (rejecting a similar federal preemption argument and affirming exclusion of Army Corps of Engineers' testimony "because federal law does not preempt state law on [the issue of regulating navigable waterways]"); Odom v. Deltona Corp., 341 So.2d 977 (Fla.1976) (determining navigability in context of developer's right to drain, dredge, and alter shores, bottoms, and waters of certain lakes); Lopez v. Smith, 145 So.2d 509 (Fla. 2d DCA 1962) (determining navigability in context of suit to quiet title); McDowell v. Trustees of Internal Improvement Fund, 90 So.2d 715 (Fla.1956) (determining navigability in context of suit against owners who dredged lake). In this same regard, we disagree with Harbor Beach's contention that Water Taxi was required to exhaust federal administrative remedies before bringing its action.
Harbor Beach's third argument attacks the trial court's determination Water Taxi established evidence of a special injury sufficient to demonstrate its standing as a private corporation to redress a public nuisance. As was explained in Thomas v. Wade, 48 Fla. 311, 37 So. 743 (1904):
Where the erection of a bridge across a navigable stream obstructs navigation, a suit to abate the obstruction cannot be maintained by an individual who claims only the public right of navigation, unless it is alleged and proven that he suffers some special or particular injury or damage different not only in degree, but in kind, from the injury or damage suffered by the public from such obstruction.
Id.
Water Taxi established a special injury by introducing evidence demonstrating Harbor Beach's footbridge did not obstruct all navigation on Lake Mayan, and further, Water Taxi's inability to navigate under the footbridge resulted in injury to its business opportunities and a loss of income different in kind than that suffered by the public at large. The instant case presents the opposite factual scenario to that present in Thomas, where the court noted: "The proofs show that since the construction of the bridge there is no navigation over Cross creek under said bridge, and that complainant's boat cannot pass thereunder." Id. (emphasis supplied). While each member of the public was prohibited from passing under the subject bridge in Thomas, evidence in the instant case showed some members of the public were able to navigate under Harbor Beach's footbridge across Lake Mayan. We find this distinction significant in light of the purpose underlying the "special injury standing rule" to avoid multiplicity of suits when an individual seeks to abate a public nuisance.
Our application of Thomas to the facts present here is obviously at odds with that of the dissent. We place greater significance on the Thomas court's recognition that the obstructing bridge in Thomas precluded any and all navigation over Cross creek under the bridge. We believe our emphasis is both appropriate and necessary in light of the purpose underlying the special injury standing rule. A multiplicity of suits is avoided in the instant case because Water Taxi stands in a position different from that of the public at large, while a multiplicity of suits would have occurred in Thomas because each member of the navigating public suffered the same injury. We believe the dissent's comparison of the degree of economic damage suffered in Thomas with that suffered by Water Taxi ignores the significance of Water Taxi's ability to demonstrate an injury different both in degree and kind from that suffered by the public.
In Brown v. Florida Chautauqua Ass'n, 59 Fla. 447, 52 So. 802 (1910), the court explained the reasoning underlying the special injury standing rule:
In order to secure an efficient administration of the law for the benefit of the public and to avoid the evil of many suits to accomplish one purpose, public wrongs are redressed at the suit of proper officials, and individuals are not permitted to maintain separate judicial proceedings to redress *1233 a wrong that is public in its nature unless the individual suffers or is threatened with some special, particular, or peculiar injury growing out of the public wrong. If a public nuisance causes special or peculiar injury to an individual different in kind and not merely in degree from the injury to the public at large, and the injury is substantial in its nature, the individual may have his civil remedy. If the remedy at law is inadequate, equity will afford appropriate relief. Where an unlawful obstruction of a public highway merely affects injuriously an individual's right in common with the public to pass over the highway, the individual suffers no injury different in kind from the public and has no private right of action. Where, however, an unlawful obstruction to a public highway not only injures the right of an individual, in common with the public, to pass over the easement, but causes peculiar and special injury of a substantial nature to an individual, he has his private right of action to redress the special wrong to him; and, where the remedy afforded by an action for damages in a court of law is inadequate, appropriate relief may be sought in a court of equity.
Brown, 52 So. at 804.
Unlike the public at large, a segment of which was able to navigate under Harbor Beach's footbridge, the evidence here showed Water Taxi was unable to navigate under the footbridge in all but one of its vessels, and even that vessel could possibly navigate under the bridge only during certain tide conditions. Further, Water Taxi introduced competent substantial evidence supporting the trial court's finding that its inability to navigate under the footbridge resulted in a loss of business opportunities and loss of revenues. We will not disturb a trial court's finding when supported by competent substantial evidence.
Examination of the facts in Brown reveals further similarities supporting application of that court's reasoning to the instant case. In Brown a fenced enclosure blocked direct passage from the plaintiffs' hotel to a railroad depot, which caused the public at large to take a circuitous route to the depot. The hotel owners filed suit seeking removal of the obstruction alleging injury to their hotel business and to the value of their property, and their complaint was dismissed. Noting the hotel owners' allegations of special injury were "not very explicit or full and complete," the court nevertheless reversed the dismissal of the owners' complaint. Id., 52 So. at 805. The court held the obstruction was a special and substantial injury to the hotel owners' business in accommodating the traveling public, in light of the proximity and location of the obstruction with reference to the hotel and railroad depot, the character of the hotel business and its natural relation to the railroad depot, and the inconvenience and increased risks of being forced to use a more dangerous and longer route from the hotel to the depot. Id.
Similarly here, the obstruction across Lake Mayan created by Harbor Beach's footbridge is a special and substantial injury to Water Taxi's business of accommodating the travelling public on the water, in light of the proximity and location of the footbridge with reference to the location of businesses desiring Water Taxi's services and the natural relation between the character of Water Taxi's business and the hotel and apartment complex Water Taxi is precluded from directly servicing. This is not a case where multiplicity of suits was threatened, because Water Taxi's suit was not "maintainable by every person passing that way." Jacksonville, T. & K.W. Ry. Co. v. Thompson, 34 Fla. 346, 350, 16 So. 282, 283 (1894) (denying relief to plaintiff unable to establish special injury different in kind from that suffered by the community at large, each member of which was inconvenienced by railroad's obstruction of a public highway). Accepting the dissent's interpretation of Bozeman v. City of St. Petersburg, 74 Fla. 336, 76 So. 894 (1917), the facts of the instant case including Water Taxi's unique reliance on, and inability to navigate, Lake Mayan for the conduct of its business make the instant case analogous to Brown and distinguishable from Bozeman.
Finally as to Harbor Beach's final argument, we admit the outcome of this case may appear inequitable as against Harbor Beach. However, the result is not inequitable *1234 with reference to the well-recognized rule that a riparian owner's right to use navigable waters and the lands thereunder is concurrent with that of the public, not superior to that of the public. Ferry Pass Inspectors' & Shippers' Ass'n v. White's River Inspectors' & Shippers' Ass'n, 57 Fla. 399, 48 So. 643 (1909).[1]
AFFIRMED.
GLICKSTEIN, J., concurs.
GROSS, J., dissents with opinion.
GROSS, Judge, dissenting.
I respectfully disagree with the majority's conclusion that Water Taxi has established evidence of a special injury sufficient to demonstrate its standing as a private corporation to redress a public nuisance. The majority's holding in this case goes far beyond those Florida Supreme Court cases which greatly limit a private citizen's ability to seek an injunction of a public nuisance. Although the salient cases date from the early part of this century, they have not been expanded by subsequent decisions.
Harbor Beach came into existence in 1941, when it was known as the Harbor Beach Company. It is a non-profit corporation whose members own lands abutting Lake Mayan, located in a primarily residential area in Fort Lauderdale. Harbor Beach built its footbridge in 1946 pursuant to a building permit issued by the city. The bridge is 309 feet long with a clearance of three feet six inches at high tide and six feet at low tide. Harbor Beach owns the real property on both sides of the bridge. Harbor Beach's parcel of land on the beach side of Lake Mayan is landlocked and inaccessible other than by crossing the footbridge, which connects the corporation's two parcels of land.
Water Taxi began operating in 1988. Because its vessels were too tall to travel underneath the footbridge, Water Taxi contends that it was unable to provide direct service to potential customers north of the bridge, including the Harbor Beach Marriott Hotel, the largest resort in Broward County. Smaller vessels are able to navigate under the footbridge. Even with the existing obstruction, Water Taxi has done a "[c]onsiderable amount of business" with guests of the hotel; passengers either walk or take a minibus to an off-site boarding location.
Thomas v. Wade, 48 Fla. 311, 37 So. 743 (1904), controls the result in this case. There, the plaintiff sued the county commissioners of Alachua County concerning a bridge the county had erected over the navigable stream "Cross Creek." Before the construction of the bridge, the plaintiff had built a steamboat for the "express purpose of operating his said steamboat through said creek and into Orange Lake." Id., 37 So. at 743. He had "used said stream for years, and had built up a good business." Id. The bridge stopped all navigation over the creek and the plaintiff's business was "almost entirely destroyed." Id. The trial court ordered the county to remove the bridge, to raise it higher, or to construct a draw in the bridge "sufficient to permit the passage of boats fit for transportation" on the stream. Id.
The supreme court reversed, holding that the citizen had no standing to bring suit and setting forth the general rule quoted in the majority opinion. The court observed:
There is no showing of injury or damage to complainant different in kind from that of any other person who might undertake to use the stream for purposes of navigation under similar circumstances. The only right the complainant shows he is deprived of is the public right of navigation in the stream. An injury to this right can be redressed only at the suit of the proper authorities.
Id.
Thomas precludes Water Taxi from using the damage to its business to establish a special injury or damage sufficient to give it standing to bring suit.[2] The plaintiff in *1235 Thomas demonstrated a greater damage to his business than did Water Taxi. He had built his boat specifically to navigate the stream obstructed by the bridge. Because of the blockage, his business was almost completely decimated. Water Taxi came into existence after the footbridge was built and its business was hindered by the obstruction, but not almost destroyed. From the standpoint of damage to its business, Water Taxi presents a less compelling case than the plaintiff in Thomas, where the supreme court found no special injury.
The majority's attempt to distinguish Thomas is unpersuasive. The majority finds it significant that "some members of the public were able to navigate under Harbor Beach's footbridge," while in Thomas "each member of the public was prohibited from passing under the subject bridge." A "special injury or damage" under Thomas is one "different not only in degree, but in kind, from the injury or damage suffered by the public" from an obstruction to navigation. Thomas, 37 So. at 743. In measuring the injury or damage, the Thomas court focused on how the bridge obstructed navigation, finding the plaintiff to be in no different position than any other person desiring to navigate the stream; every person sailing the stream faced the same bridge.
Similarly, every boat floating on Lake Mayan faces the same footbridge. Using the language of Thomas, Water Taxi does not suffer a different "kind" of injury than any other member of the public with a tall boat. The difference is one of degree, depending on the height of the boat seeking to pass underneath the bridge. As the majority observes, the standing rule in public nuisance cases is to avoid a multiplicity of suits. If Harbor Beach modifies the bridge to accommodate Water Taxi, as the trial court order requires, then in five years, a competitor of Water Taxi with an even taller boat would have standing to enforce yet another change. If change is to be effected here, it must be by a lawsuit brought by the appropriate government officials on behalf of all the members of the public.
In two cases cited by the majority in support of its conclusion, an essential element in the "special injury" equation is the ownership of land adversely affected by an obstruction to a waterway or highway. In Ferry Pass Inspectors' & Shippers'Ass'n v. White's River Inspectors' & Shippers' Ass'n, 57 Fla. 399, 48 So. 643 (1909), the issue was whether the plaintiff's claim had stated a cause of action for equitable relief.[3] The plaintiff was the owner of land fronting on a river. It complained that the defendant's operation of a timber business on the river deprived it of all access to the river from its property. The plaintiff sought an order from the equity court enjoining the defendant from blocking access to the river. The supreme court reversed the order of dismissal. The Ferry Pass holding was tied to the ownership of riparian lands, with the supreme court drawing a distinction between a riparian landowner who runs a business on his land and who seeks to remove a river based obstruction, and a business owner who operates on navigable waters and whose claim to better navigability does not derive from the ownership of riparian property:
A riparian owner has a right to enjoin in a proper proceeding the unlawful use of the public waters or the land thereunder including the shore which is a part of the *1236 bed, when such unlawful use operates as a special injury to such riparian owner in the use and enjoyment of his riparian lands... [citations omitted] ... In the absence of a valid statute providing otherwise, the injury must relate to riparian lands or business conducted thereon, and not to business conducted on the waters by virtue only of the right of navigation.

Id., 48 So. at 645 (emphasis supplied). Ferry Pass does not support Water Taxi's case since the latter's claim is based only on its right to unobstructed navigation on the lake, without any linkage to the ownership of riparian property.
The second case cited by the majority, Brown v. Florida Chautauqua Ass'n, 59 Fla. 447, 52 So. 802 (1910), involved a property owner who operated a hotel on his land near a train depot. The property owner sued to remove street obstructions which required hotel guests to travel a circuitous route from the depot to the hotel. The owner claimed great damage to the hotel business and "direct and material damage to the value" of the property. The supreme court stated the rule that only one "specially injured by an unlawful obstruction in a public highway may have the aid of a court of equity in removing the obstruction." Id., 52 So. at 804.
The Brown court held that the complaint on its face stated a claim of special injury. Those factors the court identified as comprising a special injury included the plaintiff's ownership of the affected real estate, the hotel business on the lot and its dependance on the location for customers, the proximity of the property to the obstruction and the depot, the danger and length of the circuitous route around the obstruction, the decrease in value of the real property caused by the obstruction, and the financial losses suffered by the hotel business. A crucial element of the court's holding in Brown is the plaintiff's ownership of real property with a unique location next to the obstruction.
Those factors so crucial to the holding in Brown are not at issue in the case at bar. Water Taxi owns no real property adversely affected by the bridge. Brown was limited to its facts in Bozeman v. City of St. Petersburg, 74 Fla. 336, 76 So. 894 (1917), a case where the plaintiff landowners challenged the closing of certain streets for a railroad depot. The plaintiffs owned several businesses and contended that the street closing required customers to travel a "circuitous and inconvenient way" to patronize the stores. Id., 76 So. at 895-96. The plaintiffs' complaint alleged a loss of business and a "great depreciation in the value of their property." Id. at 896.
The supreme court affirmed the trial court's dismissal of the bill of complaint, finding that the plaintiffs had suffered no special injury to give them standing to bring suit. The court observed that other parcels of real property were also affected by the street closings. The court went on to state:
[I]t is clear we think that the damage sustained by the complainants because of such obstruction is not different in kind from the damage sustained by the community at large. It is true that complainants are denied the use of the street so obstructed, but their properties are accessible from other streets. It is likewise true that the public generally are denied the use of such street. If, therefore, there is a difference in the damage sustained, it is in degree. In such a case, as we have seen, the remedy is through the proper public authorities.
Id. at 897; see also Jacksonville, T. & K.W. Ry. Co. v. Thompson, 34 Fla. 346, 16 So. 282, 284 (1894) (stating that a plaintiff's mere proximity to an obstructed road, so that he uses "the same oftener than other citizens," causes a plaintiff to suffer damages "to a greater degree, but not of a different kind," than other members of the public). The Bozeman court distinguished Brown by characterizing its facts as showing a "special, peculiar, particular, and substantial injury to the complainants." Bozeman, 76 So. at 897.
Based on Thomas, Ferry Pass, Brown, and Bozeman, in order to demonstrate a special injury sufficient to have standing to enjoin an obstruction to a roadway or waterway as a public nuisance, a private plaintiff must link the damage to ownership of property uniquely situated near the obstruction and further demonstrate that a business located on the property will be damaged as a result of *1237 obstruction. Since Water Taxi cannot make such a showing, it has no standing to seek injunctive relief concerning the bridge.
NOTES
[1] We note our disagreement with the dissent's extrapolation of the holdings in Thomas, Ferry Pass, Brown, and Bozeman to arrive at a special injury standing test more severely limiting a private citizen's standing to enjoin a public nuisance than previously enunciated in any case.
[2] Water Taxi relies on Restatement of Torts(Second) § 821C, comment h, illustration 10, to support the proposition that "pecuniary loss to the plaintiff resulting from the public nuisance is a harm different in kind from that suffered by the general public." Illustration 10 is very close to the facts of this case:

A constructs the bridge over a navigable stream, blocking navigation. B who operates commercial boat line on the stream, is prevented from passing the bridge and as a result loses profits. B can recover for the public nuisance.
The Restatement is directly contrary to the holding of Thomas.
[3] The appeal in Ferry Pass was from a trial court order sustaining a demurrer and dismissing the bill of complaint in equity. A demurrer was a defensive motion admitting the facts alleged by the complaint to be true, but arguing that they were "insufficient for the plaintiff to proceed upon or to oblige the defendant to answer." Black's Law Dictionary, p. 389 (5th ed.1979). The modern pleading equivalent of a demurrer is a motion to dismiss for failure to state a cause of action under Florida Rule of Civil Procedure 1.140(b)(6). See City Drug Co. v. Lee, 151 Fla. 18, 9 So.2d 169 (1942).