NESBITT, Senior Judge.
Gayety Theatres, Inc., d/b/a The Pussycat Theatre (herein Gayety), the owner of an entertainment theater and nightclub located at 7770 Biscayne Boulevard, filed a complaint against the Department of Transportation (DOT) for damages grounded upon inverse condemnation. The complaint alleged a substantial impairment of access to Gayety’s commercial property. The theater is located on the southwest corner of the intersection of Northeast 78th Street and Biscayne Boulevard. The governmental action giving rise to Gayety’s claim consisted of DOT’s construction project widening Biscayne Boulevard.
Before construction, Gayety’s customers had access to Northeast 78th Street and Biscayne Boulevard through a driveway connecting to each of the abutting roads. Both north and south bound traffic on Biscayne Boulevard could turn into Gayety’s Biscayne Boulevard driveway and vehicles exiting the property through that driveway could go either north or south on Biscayne Boulevard.
After construction, Gayety still had the same driveway connections to Northeast 78th Street and Biscayne Boulevard. However a concrete median now prevented northbound traffic from entering the nightclub through the Biscayne Boulevard driveway. As a result northbound traffic on Biscayne Boulevard had to proceed north to 82nd Street and wind its way back to the property, some one half mile. Southbound Biscayne Boulevard traffic was undisturbed and could still turn directly into the nightclub.
The case proceeded to trial. Gayety’s expert witness in the areas of architecture, *1127 building inspection and urban planning testified that the DOT’S construction project limited access to the nightclub as described above. Among its defenses the DOT argued the change amounted to a non-compensable modification of traffic flow rather than a compensable taking of access. The trial court entered a final judgment of inverse condemnation as to liability against the DOT, making findings of fact and conclusions of law in favor of Gayety. The DOT appealed the final judgment. A jury trial on the issues of valuation and damages remains pending.
Both sides cite to Palm Beach County v. Tessler, 538 So.2d 846, 850 (Fla. 1989). In Tessler the court concluded that the owners of commercial property located on a major public roadway were entitled to a judgment of inverse condemnation when the county government blocked off access to the property. However Tessler, 538 So.2d at 849, went on to state:
The fact that a person loses his most convenient method of access is not such damage which is different in kind from damages sustained by the community at large where his property has suitable access from another street even though the alternate route is longer. Bozeman v. City of St. Petersburg, 1917, 74 Fla. 336, 76 So. 894; Halpert v. Udall, S.D.Fla.1964, 231 F.Supp. 574. Cf. Daugherty v. Latham, 1937, 128 Fla. 271, 174 So. 417.
Tessler cautions that “[a] taking has not occurred when governmental action causes the flow of traffic on an abutting road to be diminished.” Tessler, 538 So.2d at 849. The case observes:
There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one’s property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one’s access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner’s right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist. A taking has not occurred when governmental action causes the flow of traffic on an abutting road to be diminished.
Tessler, 538 So.2d at 849. (Emphasis added.)
While one might conclude that whether a substantial loss occurred would be a question of fact, Tessler, 538 So.2d at 850, makes clear that is not the case, stating:
We note that the district court of appeal held that it was a question of fact as to whether the walling off of the respondents’ commercial property and circuitous alternative to reach it amounted to more than inconvenience. Actually, in an inverse condemnation proceeding of this nature, the trial judge makes both findings of fact and findings of law. As a fact finder, the judge resolves all conflicts in the evidence. Based upon the facts as so determined, the judge then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity. (Emphasis added.)
As we observed in State, Dep’t of Transp. v. Suit City of Aventura, 774 So.2d 9 (Fla. 3d DCA 2000), citing Anhoco Corp. v. Dade County, 144 So.2d 793 (Fla. 1962), “a taking does not occur when government merely regulates access to property under its police power, such as speci- *1128 lying the location of driveways in and out of abutting property, prohibiting U-turns or left turns, or establishing one-way traffic.”
As we see it, this was no more than “the government merely limiting] direct access to one’s property from one side of a two way roadway adjacent to the property.” Rubano v. Department of Transp., 656 So.2d 1264, 1268-69 (Fla.1995)(Elimination of U-turn near entrance to landowners’ businesses, with result that customers traveling in one direction would have to travel an additional one and one-half miles, did not constitute a taking). See also Department of Transp. v. Gefen, 636 So.2d 1345 (Fla.1994)(ruling in Department’s favor where property owner objected to the loss of I 95 ingress and egress from a road that abutted her property); Department of Transp. v. Capital Plaza, Inc., 397 So.2d 682 (Fla.1981)(concluding landowner has no property right in continuation or maintenance of traffic flow past his property).
Accordingly, the order under review is reversed.