LAGOA, J.
The State of Florida Department of Environmental Protection (the “Department”) appeals from a declaratory judgment entered in favor of Juan Garcia, Jr., and his parents (collectively, the “Garcias”). Because we find that the trial court improperly exercised its declaratory judgment jurisdiction, we reverse.
I. FACTUAL HISTORY

A. Negligence Action Against the Department

On February 1, 1989, Juan Garcia, Jr. was rendered quadriplegic when he dove into the ocean along South Beach and struck his head on debris that had been left there after demolition of the South *542 Beach pier. In a separate action, the Gar-cias sued the City of Miami Beach (the “City”) and the Department, among others, for negligence in failing to remove underwater debris and for failing to take the necessary precautions to prevent the accident. The Department obtained a summary judgment in its favor, which this Court reversed, and the supreme court approved this Court’s decision. See Fla. Dep’t of Natural Res. v. Garcia, 753 So.2d 72 (Fla.2000). On remand, that suit proceeded against the City and the Department. The City thereafter entered into a “compromise settlement” with the Garcias in the amount of $1,250,000; paid them the statutory limits of liability set forth in section 768.28, Florida Statutes (1997), in the amount of $200,000.00; and agreed to support a claims bill in the amount of $1,050,000.00. In April, 1998, the Legislature passed the claims bill and ordered the City to pay $1,050,000.00 to the Garcias. See Ch. 98-458, Laws of Florida.
The Department then moved for summary judgment on one of its affirmative defenses, asserting that “there is no basis for the court to enter a judgment against the [Department]” because the Garcias had already recovered the maximum amount authorized under section 768.28 from the City, and as the Department read section 11.065(2), Florida Statutes,[1] the Garcias were limited to seeking only one claims bill from the Legislature for the incident. Specifically, the Department argued that “it would be a waste of judicial resources (as well as the resources of the Department) to require the Department to participate in mediation or stand trial in this matter because there is no authority for the Plaintiffs to recover any further damages from the Department through the claims bill process or otherwise.” The motion was denied. The denial of the Department’s motion for summary judgment resulted in a non-final, non-appeal-able order in that action.
B. The Department’s Declaratory Action
Because of its belief that “there is no need for the Trial Court in the personal injury action to conduct a trial,” the Department proposed to the Garcias that it file the instant declaratory action presenting the issue of whether section 11.065(2) precluded the Garcias from presenting a claims bill for any excess judgment; have the declaratory action transferred to the judge who denied the motion for summary judgment; and then obtain a final, appeal-able order in the declaratory action reflecting the ruling in negligence action. In effect, the Department proposed to convert its affirmative defense into a “separate” action in order to obtain appellate review. The Garcias agreed to this procedure.
Both the Department and the Garcias admit that the declaratory action was filed solely as an attempt to obtain appellate review of the denial of the Department’s motion for summary judgment on the claims bill issue in order to avoid the *543 “waste of state and judicial resources” in proceeding to trial if the Garcias were ultimately precluded from presenting another claims bill to the Legislature. In other words, the entire strategy admittedly was devised by the parties as a way to obtain review of the exact issue presented and ruled upon in the non-final, non-ap-pealable denial of the motion for summary judgment in the pending negligence action.
The Department then filed the instant complaint for declaratory relief, in which it alleged that the “submission of multiple claims bills to the Legislature for damages resulting from the same incident or occurrence is barred and that, therefore, there is no need for the Trial Court in the personal injury action to conduct a trial.” The Garcias answered, denying that the submission of multiple claims bills was barred. As promised, the Department obtained a transfer of the declaratory action to the same trial judge who was presiding over the negligence case. The Garcias then moved, ore tenus, for final summary judgment at a status conference, without objection by the Department. The Department relied upon its motion for summary judgment filed in the negligence action, and the Garcias relied upon their response in opposition to the Department’s motion for summary judgment filed in the negligence action. The trial court granted the Garcias’ ore tenus motion for summary judgment, and entered a final judgment in the Garcias’ favor in this declaratory action. This appeal followed.
II. ANALYSIS
A. This Court’s Jurisdiction
We note our disapproval of the procedural scheme employed in this case. The trial court’s denial of the Department’s motion for summary judgment in the negligence action was neither an ap-pealable order nor a sufficient basis to invoke this Court’s certiorari jurisdiction. See Miami-Dade Cnty. v. Perez, 988 So.2d 40 (Fla. 3d DCA 2008) (holding that denial of County’s motion for summary judgment was a non-appealable non-final order and did not meet criteria for review via certio-rari); Taggart v. Morgan, 943 So.2d 250 (Fla. 3d DCA 2006) (stating rules of appellate procedure do not permit interlocutory appeals of non-final orders denying motions for summary judgment); Harte v. Palm Beach Biltmore Condo. Ass’n, 436 So.2d 444, 445 (Fla. 4th DCA 1983) (holding that order denying motion for summary judgment was “not a permitted interlocutory appeal [and was] not a proper matter for certiorari”; “the necessity of proceeding with a trial is not a sufficient ground to invoke certiorari”).
The absence of an appealable order meant the parties would have to proceed to trial with the possibility that the Garcias might not be able to secure payment of any excess judgment through a claims bill. To prevent this, the Department filed this declaratory action in order to obtain a final judgment and seek review in this Court. In other words, the parties admittedly used a declaratory action as an “end run” around the Florida Rules of Appellate Procedure. This is similar, although not completely analogous, to instances where parties improperly attempt to confer subject matter jurisdiction on a court. See generally Polk Cnty. v. Sofka, 702 So.2d 1243 (Fla.1997) (refusing to decide merits where district court lacked jurisdiction to hear appeal notwithstanding the parties’ attempt to confer jurisdiction on the district court); Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 181 (Fla.1994) (acknowledging that “the parties cannot stipulate to jurisdiction over the subject matter where none exists”); Rubin v. Gordon, 165 So.2d 824, 825 (Fla. 3d DCA 1964) (dismissing appeal where plaintiff request *544 ed dismissal of complaint in order to seek review; permitting such a procedure would “permit the plaintiff to do indirectly what he could not do directly under the Florida Rules of Civil Procedure”).
Despite our disapproval of the manner in which this case arrived at this Court, we are nevertheless presented with a final declaratory judgment and therefore this Court has jurisdiction to proceed with consideration of the appeal.
B. The Trial Court’s Jurisdiction
Although this Court has jurisdiction to hear the Department’s appeal, we do not reach the merits of the appeal as presented by the parties because we conclude that the trial court lacked jurisdiction to enter the declaratory judgment. We acknowledge that neither party addressed the issue of jurisdiction in the trial court or on appeal. However, this does not prevent this Court from raising the issue of the trial court’s jurisdiction. In Soflca, the Supreme Court quashed a decision of the district court and remanded with directions to dismiss the appeal because it found that the district court lacked jurisdiction to hear an appeal from a stipulated final judgment where an order granting a new trial was contained in the record on appeal. 702 So.2d at 1245. The parties asserted that this conclusion would result “in a waste of judicial resources.” Id. at 1244. In reaching its conclusion the Supreme Court stated:
It is true, as the parties state, that this conclusion “will result in a waste of judicial resources.” However, “[cjourts are bound to take notice of the limits of their authority and if want of jurisdiction appears at any stage of the proceedings, original or appellate, the court should notice the defect and enter an appropriate order.” West 132 Feet v. City of Orlando, 80 Fla. 233, 239, 86 So. 197, 198-99 (1920). This is because the limits of a court’s jurisdiction are of “primary concern,” requiring the court to address the issue “sua sponte when any doubt exists.” Mapoles v. Wilson, 122 So.2d 249, 251 (Fla. 1st DCA 1960). Thus, while the resulting “waste of judicial resources” is regrettable, in the absence of jurisdiction, it is unavoidable.
Id. at 1245 (emphasis added).
The Florida Declaratory Judgment Act, chapter 86, Florida Statutes (2009), is remedial in nature and should be broadly construed. See § 86.101, Fla. Stat. (2009); Conley v. Morley Realty Corp., 575 So.2d 253, 254 (Fla. 3d DCA 1991). Section 86.011(1), Florida Statutes (2009), confers upon the circuit courts jurisdiction to render declaratory judgments as to the existence or nonexistence of any “immunity, power, privilege or right.” However, in order to properly invoke the jurisdiction of the circuit court, the party seeking a declaration must not only show that he is in doubt as to the existence or nonexistence of some right or status, see Kelner v. Woody, 399 So.2d 35, 37 (Fla. 3d DCA 1981); X Corp. v. Y Person, 622 So.2d 1098, 1101 (Fla. 2d DCA 1993), but also that there is a bona fide, actual, present, and practical need for the declaration:
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, *545 either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.
May v. Holley, 59 So.2d 636, 639 (Fla.1952) (emphasis added).
As this Court explained in Conley, a complaint seeking declaratory relief must allege ultimate facts showing that there is “a bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff; the plaintiff’s doubt about the existence or non-existence of his rights or privileges; that he is entitled to have the doubt removed.” 575 So.2d at 255 (quoting Floyd v. Guardian Life Ins. Co., 415 So.2d 103, 104 (Fla. 3d DCA 1982)). Put another way, there “must exist some justi-ciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction. Otherwise, any opinion ... would be advisory only and improperly considered in a declaratory action.” Martinez v. Scanlan, 582 So.2d 1167, 1171 (Fla.1991). Additionally, “[e]ven if both parties have no objection to the court entertaining [a declaratory action], mere mutual agreement between parties cannot confer subject matter jurisdiction upon a court.” Id. at 1171 n. 2. If a case does not come clearly within the limitation upon the judicial power to render a declaratory judgment, the case must be dismissed. May, 59 So.2d at 639.
Here, the Department’s complaint for declaratory relief was insufficient to invoke the jurisdiction of the circuit court to render a declaratory judgment. The Department is not in doubt as to the existence of its rights or privileges, if any, under section 11.065(2). Rather, the Department was admittedly seeking an advisory opinion from this Court on the correctness of the trial court’s previous denial of summary judgment in the negligence proceeding in order to avoid the time and expense of trial in that proceeding if we decide that ruling was in error.
Additionally, the Department does not have a bona fide, actual, present need for a declaration that the Garcias cannot submit another claims bill to the Legislature in order to assert its “affirmative defense” in the negligence action that the Garcias should not be permitted to proceed to judgment. First, even though the Garcias have already been paid the statutory maximum by the City, the trial court still has jurisdiction to enter a judgment in their favor against the Department. See Gerard v. Dep’t of Transp., 472 So.2d 1170 (Fla.1985) (where city paid the maximum amount permitted by section 768.28(5) trial court retained jurisdiction to enter judgment for an excess sum against Department of Transportation).
Second, even if the Garcias obtain an excess judgment in their favor and submit a claims bill for relief to the Legislature, the decision whether or not to pass a claims bill and pay any or all of a claim is entirely a legislative function completely independent of judicial intervention. As a result, not only is the determination regarding whether a claims bill may be submitted premature at this point, it is not clear how a judicial determination whether a claims bill may be submitted to the Legislature can have any real effect when the Legislature conducts it own independent, de novo hearing to determine whether to expend public funds to pay the claim. See id. at 1173 (explaining that after a *546 claims bill is presented, the Legislature conducts its own independent hearing); 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 9.18 (2010-11 ed.) (explaining that after a claims bill is filed in the House of Representatives, a special master conducts hearings and the claimant bears the burden of proof and must present evidence to support the claim); see also The Florida Senate Interim Project Report 2005-147, Nov. 2004, Committee on Judiciary (stating that in the claims bill process, “[t]he hearing is a de novo hearing, meaning that the Special Masters treat the subject of the hearing as if no decision was rendered by a court”). In other words, it is a legislative function to determine whether to pay a submitted claims bill, not a judicial one. See Gerard, 472 So.2d at 1173 (relief by way of claims bill entirely in the Legislature’s discretion).
The Department’s attempt to prevent the Garcias from obtaining a judgment in the negligence case is also legally meaningless because the Garcias are always free to go directly to the Legislature with their claim against the Department, without a judgment in hand, and pursue the non-judicial, purely legislative, claims bill process. See id. at 1172 (“[Wjhile the legislature has placed limits on recovery, ‘claimants remain free to seek legislative relief bills, as they did during days of complete sovereign immunity.’ ” (quoting Jetton v. Jacksonville Elec. Auth., 399 So.2d 396, 397 (Fla. 1st DCA 1981))); City of Miami v. Valdez, 847 So.2d 1005, 1006-7 (Fla. 3d DCA 2003) (“[Cjompensation for wrongs committed by governmental entities may be obtained solely from the legislature through the arduous legislative claims bill process.”).
Accordingly, we find that the Department’s complaint for declaratory relief was not sufficient to meet the jurisdictional requirements of the Declaratory Judgment Act, and therefore the trial court lacked jurisdiction to render the declaratory judgment.
C. The Trial Court’s Abuse of Discretion
Even if the trial court had jurisdiction to consider the declaratory action, we find that the trial court should not have entertained the matter. Although the Declaratory Judgment Act is to be liberally administered and construed, see § 86.101, Fla. Stat. (2009); Olive, 811 So.2d at 648, the granting of a declaratory judgment “remains discretionary with the court, and not the right of a litigant as a matter of course.” Kelner, 399 So.2d at 37. When the issue presented in a declaratory action is the subject of an earlier filed suit in which the plaintiff can secure full relief, the trial court should not consider the request for declaratory relief. In Taylor v. Cooper, 60 So.2d 534 (Fla.1952), the supreme court held that declaratory relief was not cognizable on matters which could be defenses in a criminal case pending against the plaintiff because “relief sought in connection with such matters may be granted fully and completely in said court of crimes or upon appeal from the final judgment in those criminal cases.” 60 So.2d at 535. Specifically, the Court explained:
Under these circumstances our declaratory decree statute, Chapter 87, Florida Statutes, 1951, F.S.A., cannot be invoked because we are of the opinion that we should follow the almost universal rule to the effect that if at the time the proceeding for a declaratory decree is initiated a suit is already pending which involves the same issues and in which litigation the plaintiff in the declaratory decree action may secure full, adequate and complete relief, such bill for declara *547 tory decree will not be permitted to stand.
Id.; accord McIntosh v. Harbour Club Villas Condo. Ass’n, 468 So.2d 1075, 1081 (Fla. 3d DCA 1985) (Nesbitt, J., specially concurring) (stating that a trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which plaintiff can secure full, adequate and complete relief); Kies v. Fla. Ins. Guar. Ass’n, 435 So.2d 410, 411 (Fla. 5th DCA 1983) (finding that trial court should not have entertained a separate action for declaratory judgment on an issue properly raised in the pleadings in the main action and already before the court).
Here, the only issue presented in the Department’s declaratory action is the exact same issue it presented in its motion for summary judgment in the negligence action. Indeed, in seeking summary judgment in the declaratory action, the parties relied upon the very same pleadings each had filed in the summary judgment proceedings in the negligence action. Additionally, not only was the issue the same one presented in the summary judgment proceedings, but the Department had already secured a ruling, although non-final and not to its liking, on the issue. The Department could have secured “full, adequate and complete relief’ in an appeal from a final judgment in the negligence case, but instead, sought review of the same issue in a declaratory action. Accordingly, even if the trial court’s jurisdiction had been properly invoked, we would have found that the trial court abused its discretion in considering the declaratory action on the same issue raised and ruled upon in the earlier filed and still-pending negligence action.
III. CONCLUSION
For the above reasons, we reverse the final declaratory judgment entered in favor of the Garcias and remand with directions to the trial court to dismiss the action.
Reversed and remanded with directions.

. That statute reads:
11.065. Claims against state; limitations; notice
(1) No claims against the state shall be presented to the Legislature more than 4 years after the cause for relief accrued. Any claim presented after this time of limitation shall be void and unenforceable.
(2) All relief acts of the Legislature shall be for payment in full. No further claims for relief shall be submitted to the Legislature in the future.
(3)Notice shall be given as provided in s. 11.02 prior to the introduction of any relief act which provides for the payment of the claim from funds scheduled for distribution to a municipality from the revenue-sharing trust fund for municipalities.