LAGOA, J.
(dissenting).
I respectfully disagree with the majority’s decision to affirm the trial court. The plaintiffs, Lisa Detournay (“Detournay”), Brenda Randol (“Randol”), and the Riviera Neighborhood Association, Inc. (“RNA”) (collectively, “Homeowners”) appeal an order and final judgment dismissing with prejudice Count I (declaratory relief), and finding in favor of the defendant, City of Coral Gables (the “City”), on Count II (injunctive relief), of their second amended complaint. For the following reasons, I would reverse.
I.. FACTUAL AND PROCEDURAL HISTORY
Detournay and Randol each own a home on Caballero Boulevard in Coral Gables. Their homes sit along what is known as the Mahi Waterway. The Mahi Waterway runs through the City and provides access to Biscayne Bay. Defendant/intervenor, *875 Amace Properties, Inc. (“Amace”), owns commercial property on the Mahi Waterway, west of Detournay and Randol’s homes. Amace rents spaces behind its property to boat owners, allowing them to tie up their boats along bulkheads. RNA is a homeowners association “representing the interests of its members who are concerned with protecting and preserving the residential neighborhood in the area of and adjacent to” Amace’s property.
The Homeowners filed a Second Amended Complaint for declaratory and injunc-tive relief pursuant to section 86.021, Florida Statutes (2009),[3] seeking to end the City’s abatement of its zoning regulation enforcement against Amace. The Homeowners assert that Amace’s rental of the boat spaces constitutes the operation of an “illegal private yacht basin” under the City’s zoning regulations.
In Count I, the Homeowners seek “a declaration regarding whether the private yacht basin is operating pursuant to the City’s zoning regulations and whether the City acted contrary to the requirements of its zoning regulations when it failed to close the illegal private yacht basin.” In Count II, the Homeowners seek “permanent injunctive relief that would enjoin the operation of the private yacht basin,” if the trial court finds in Count I that Amace is operating a private yacht basin contrary to the City’s zoning regulations and that “the city acted contrary to the requirements of its zoning regulations when it failed to close the illegal private yacht basin.”
The Homeowners specifically allege that Amace’s use of its property to rent out the boat spaces “has caused Plaintiffs to suffer from boat congestion, noise, pollution, canal bank erosion, wake damage and a diminution of their privacy and the tranquil use of their property.”
Amace’s Answer raised several affirmative defenses, including estoppel, laches, and that the yacht basin, which was established in 1947, is a legally non-conforming use permitted under the City’s code. The City’s Answer raised various affirmative defenses, including that municipalities have discretion to enforce their zoning regulations and the City did not abuse its discretion, that the Homeowners’ claim for injunctive relief fails to state a cause of action, that injunctive relief is an improper remedy, and that the Homeowners have failed to exhaust their administrative remedies.
On the morning of the third day of trial,[4] the City filed a renewed motion to dismiss and memorandum of law. For the first time, the City argued that the Homeowners lacked standing to assert their claims because they had not alleged, and could not establish, that they had suffered a special injury as a result of the City’s *876 failure to enforce its zoning code. The City also argued that the Homeowners’ claims failed because municipalities have discretion as to how and when to enforce their zoning regulations.
The Homeowners objected, arguing that the issue of standing could not be raised at this point in the trial. The trial court conducted a hearing on the City’s motion, and heard testimony from two of the City’s witnesses — a City zoning official and Armando Guerra, Amace’s president. Both witnesses testified to the history of various negotiations and alleged agreements between Amaee and the City with regard to Amace’s use of its property.
At the conclusion of Guerra’s testimony, the trial court dismissed Count I, finding that the Homeowners lacked standing. At the conclusion of the zoning official’s testimony, the trial court concluded that the City had not abused its discretion in the enforcement of its zoning regulations.
The trial court subsequently entered the order and final judgment on appeal. In its written order, the trial court dismissed Count I with prejudice, finding that the Homeowners lacked standing absent evidence of a special injury. Specifically, the trial court found “that there is no standing for these private citizens to bring this action absent evidence of a special injury.... Because Plaintiffs have not and cannot establish special injury, the Court finds, as a matter of law, that under the circumstances presented, these Plaintiffs lack standing as to Count I.” The trial court further found in favor of the City on Count II, concluding that, based on the testimony heard in the case, the City had not abused its discretion. This appeal ensued.
II. ANALYSIS
The trial court dismissed Count I for lack of standing. “Whether a party is the proper party with standing to bring an action is a question of law to be reviewed de novo.” FCD Dev., LLC v. S. Fla. Sports Comm., Inc., 37 So.3d 905, 909 (Fla. 4th DCA 2010) (quoting Westport Recovery Corp. v. Midas, 954 So.2d 750, 752 (Fla. 4th DCA 2007)), review denied, 63 So.3d 750 (Fla.2011). An appellate court reviews an order of dismissal based on lack of standing de novo. Wheeler v. Powers, 972 So.2d 285, 288 (Fla. 5th DCA 2008); Sanchez v. Century Everglades, LLC, 946 So.2d 563, 564 (Fla. 3d DCA 2006). “In determining whether to dismiss a complaint for lack of standing, [the Court] must confine [its] review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept all well-pled allegations in the complaint as true.” Payne v. City of Miami, 927 So.2d 904, 906 (Fla. 3d DCA 2005).
As discussed below, the trial court erred in dismissing Count I for three reasons. First, the issue of standing was waived by the City. This Court has stated that a challenge to a party’s standing can be waived if not raised as an affirmative defense. See Stratton v. 6000 Indian Creek, LLC, 95 So.3d 334, 336 (Fla. 3d DCA 2012) (standing is an affirmative defense that can be waived); Bank of New York Trust Co. v. Rodgers, 79 So.3d 108 (Fla. 3d DCA 2012) (reversing final judgment entered in favor of defendants based on plaintiffs lack of standing where there was no denial or defense raised in defendants’ pleadings concerning standing); see also Phadael v. Deutsche Bank Trust Co. Americas, 83 So.3d 893, 895 (Fla. 4th DCA 2012) (“We have previously explained that lack of standing is an affirmative defense that must be raised by the defendant and the failure to raise it generally results in waiver.”), review denied, 97 So.3d 824 (Fla.2012); Kissman v. Panizzi, 891 So.2d 1147, 1150 (Fla. 4th DCA 2005) (same). *877 But see Maynard v. Fla. Bd. of Educ., 998 So.2d 1201 (Fla. 2d DCA 2009) (holding that standing need not be raised only by means of an affirmative defense). Here, the City failed to raise standing as an affirmative defense and only asserted lack of standing on the third day of trial. I would therefore find that the City waived the issue of standing by failing to raise it as an affirmative defense, and that the trial court erred in considering the City’s motion to dismiss on that basis at such a late date in the proceedings.[5]
Second, even if a challenge to standing had not been waived, the Declaratory Judgment Act does not require that a special injury be established in order to maintain a claim under the Act, as long as the elements of the Act itself are established. See Combs v. City of Naples, 834 So.2d 194, 197 (Fla. 2d DCA 2002) (“Section 86.021, which addresses standing to seek a declaratory judgment, contains no requirement that a special injury be established.”). “[I]n order to properly invoke the jurisdiction of the circuit court, the party seeking a declaration must not only show that he is in doubt as to the existence or nonexistence of some right or status, but also that there is a bona fide, actual, present, and practical need for the declaration[.]” State, Dep’t of Envtl. Prot. v. Garcia, 99 So.3d 539, 544 (Fla. 3d DCA 2011) (citations omitted).[6]
Accepting all well-pled allegations in the Homeowners’ complaint as true, I would find that the Homeowners are in doubt as to the existence or nonexistence of a right under the City’s zoning ordinances and that there exists a bona fide, actual, present and practical need for the declaration. Because the Homeowners’ interests are sufficient to confer standing to seek a declaratory judgment here, I would find that the trial court erred in dismissing Count I for lack of standing.
Finally, even if the City had not waived the issue of standing and even if special damages were required under Florida’s Declaratory Judgment Act, I nonetheless would reverse the trial court’s order as it relates to Detournay and Randol because they sufficiently alleged special damages to allow them to maintain a cause of action. The seminal cases addressing the issue of a private citizen’s right to seek enforcement of a municipal zoning ordinance are Boucher v. Novotny, 102 So.2d 132 (Fla.1958), and Renard v. Dade County, 261 So.2d 832 (Fla.1972). In Boucher, the Florida Supreme Court established the now well-settled rule that in order for a private citizen to maintain an action to enforce a valid municipal zoning ordinance, he or she must allege facts showing “special damages.” 102 So.2d at 135. The Court explained:
We, therefore, align ourselves with the authorities which hold that one seeking redress, either preventive or corrective, against an alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole.
Id. (emphasis added).
In Renard, the Court further clarified that the “ ‘special damage’ rule of the *878 Boucher case is an outgrowth of the law of public nuisance. Zoning violations have historically been treated as public nuisances not subject to suit by an individual unless that individual has suffered damages different in kind and degree from the rest of the community.” 261 So.2d at 835 (footnote omitted). Significantly, however, the Court noted that “in the twenty years since the Boucher decision, changed conditions, including increased population growth and density, require a more lenient application of that rule.” Id. at 837-38 (emphasis added). Accord Skaggs-Albertson’s v. ABC Liquors, Inc., 363 So.2d 1082, 1088 (Fla.1978) (stating that the “special damage” rule still has vitality in actions seeking to enforce a valid zoning ordinance, albeit with a more liberal application).
Here, the Homeowners allege that Amace’s rental of the boat spaces “has caused Plaintiffs to suffer from boat congestion, noise, pollution, canal bank erosion, wake damage and a diminution of their privacy and the tranquil use of their property.” The Second Amended Complaint also states that Detournay and Ran-dol live “immediately to the east” of Amace’s property.
Applying Renard’s mandate of a more lenient application of the Boucher rule, I would find that Detournay and Randol sufficiently alleged special damages particular to them that differ in kind, rather than simply degree, from those suffered by other homeowners within Coral Gables whose properties do not lie along the Mahi Waterway and who therefore are not uniquely affected by the yacht basin’s activities.[7] Compare Kagan v. West, 677 So.2d 905 (Fla. 4th DCA 1996) (Pariente, J.) (finding that plaintiffs alleged and proved special damages different from those suffered by the community as a whole where plaintiffs shared a private road with defendant property owner), with Centrust Sav. Bank v. City of Miami, 491 So.2d 576 (Fla. 3d DCA 1986) (no standing where plaintiff made no claim that it had suffered a special injury apart from the injury suffered by any member of the general public as a result of alleged building code violations), and Cont’l Con-Dev Co. v. Shallberg, 267 So.2d 40 (Fla. 4th DCA 1972) (finding that where plaintiff brought suit on behalf of himself and all other property owners in the city, he did not have damages different in kind from that of all the other property owners in the general area where his house was across the street from alleged zoning violation).
Additionally, I believe that the trial court erred in making a finding on the merits in favor of the City on Count II (injunctive relief). As pled, Count II is dependent upon a declaration in favor of the Homeowners in Count I.[8] Therefore, *879 once the trial court determined that the Homeowners lacked standing to proceed with Count I, the trial court was necessarily precluded from making a finding on Count II.
Turning to the majority, I cannot agree with its reliance upon the doctrine of separation of powers — an issue not raised by either party before the trial court or this Court — in order to affirm the result below. Not only does the majority misapply the doctrine of separation of powers to the Homeowners’ allegations, it also fails to address the issue of the Homeowners’ standing.
The majority asserts that the trial court properly dismissed Count I (declaratory relief), not on the grounds stated by the trial court — lack of standing — but rather, under the “controlling principle of separation of powers.” Specifically, the majority states that the City’s discretion to prosecute a zoning violation is a purely executive function that cannot be supervised by the courts. The majority relies upon Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla.1985), for this proposition.
First, the issue of separation of powers' was not raised by the City or Amace before the trial court or this Court. At best, the City included a citation to Trianon in its Answer Brief bereft of any reference to the separation of powers doctrine.[9] Moreover, as this issue was not raised on appeal, Detournay and Randol have not been given an opportunity to address the issue of separation of powers.
Notwithstanding the City’s failure to raise or preserve this issue, I will address the majority’s reliance on the Trianon case. In Trianon, the issue was whether the City of Hialeah could be held liable in tort to condominium owners for damage to condominium units caused by building defects on the basis that the City of Hialeah’s building inspectors were negligent in their inspections during construction. In holding that the City of Hialeah could not be held liable, the Court reasoned that enforcement of building codes and ordinances constituted a discretionary governmental function for which there has never been a duty of care, and with which the judicial branch must not interfere. 468 So.2d at 917-18, 922.
Trianon, and the doctrine of separation of powers enunciated therein, however, do not apply in the instant case. First, Tria-non concerns a cause of action at law for damages. Here, the Homeowners did not seek a remedy at law, but rather, sought declaratory and injunctive relief. See Boucher, 102 So.2d at 134 (stating that a citizen who suffers special damages resulting from a zoning violation “is entitled to injunctive relief in the absence of an adequate legal remedy”). Therefore the rules of governmental tort liability would not apply to Appellants’ claims. See Trianon, 468 So.2d at 917 (“[F]or there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct. For certain basic judgmental or discretionary governmental *880 functions, there has never been an applicable duty of care.”) (emphasis added).
Second, the “special damage” rule set forth in Boucher is an outgrowth of the law of public nuisance, which states that because a public nuisance is an offense against all citizens, it is subject to abatement only on motion of the state. Renard, 261 So.2d at 835 n. 5; Skaggs-Albertson’s, 363 So.2d at 1088 (“Inasmuch as a public nuisance was an offense against the state and, accordingly, was subject to abatement on motion of the proper governmental agency, an individual could not maintain an action for a public nuisance unless he suffered some special damage from the public nuisance.”). But, as discussed above, if an individual can show some special damage from an alleged zoning violation, he or she then has standing to maintain an action to enforce the zoning ordinance in equity against both a municipality and a private party. See Skaggs-Albertson’s, 363 So.2d at 1088; Renard, 261 So.2d at 837; Boucher, 102 So.2d at 135; Page v. Niagara Chem. Div. of Food Mach. & Chem. Corp., 68 So.2d 382 (Fla.1953); Bozeman v. City of St. Petersburg, 74 Fla. 336, 76 So. 894 (1917). In short, once special damages are shown, enforcement of the zoning ordinance is no longer an action purely within the discretion of the state.
Thus, if the Homeowners prevail on the merits, Boucher and its progeny entitle the Homeowners to a judicial injunction prohibiting Amace from continuing to operate an allegedly illegal yacht basin; Trianon likely prohibits the Homeowners from seeking damages from the City for its reluctance to enforce its zoning regulations, but it says nothing about the Homeowners’ ability to stop the activity itself.
Additionally, the majority addresses itself to Count I (declaratory relief). But if separation of powers were a legally valid reason to dismiss the complaint, that basis would apply only to Count II (injunctive relief), in which the Homeowners sought enforcement of the City’s zoning laws against the City and Amace. Notably, the City did not raise the issue of “separation of powers” either before the trial court or this Court, as it relates to either Count I or Count II. As Count II is pled as dependent on a finding in favor of the Homeowners in Count I, and the majority fails to discuss the issue of standing, which was the basis of the trial court’s ruling on Count I below, and fails to address the Florida Supreme Court’s opinions of Boucher and Renard,[10] it is unclear how the majority can reach the issue at all.
Because there is no support for this alternative theory in the record, it is improper for the majority to rely upon it in affirming the trial court’s dismissal of Count I. See Robertson v. State, 829 So.2d 901, 907-08 (Fla.2002) (“The key to the application of [the Tipsy Coachman doctrine] of appellate efficiency is that there must have been support for the alternative theory or principle of law in the record before the trial court.”); State v. Gerry, *881 855 So.2d 157, 163 n. 5 (Fla. 5th DCA 2003).
The majority further overlooks the fact that Amace was a party to this suit. Even if the Homeowners could not seek judicial relief against the City, they retain their ability to seek a declaration that Amace’s use of its property violates the local zoning ordinances and they retain their ability to enjoin Amace from further alleged illegal activity. See e.g., Boucher; Renard; Skaggs-Albertson’s.
Indeed, the analysis by the majority imports the tort-based sovereign immunity doctrine of Trianon into an area long recognized by the Florida Supreme Court as subject to judicial enforcement against both municipalities and private parties. See Boucher; Renard; Skaggs-Albert-son’s; Fortunato. The majority expands the law of Florida here by extending the concept of municipal immunity from tort liability and damages to municipal immunity from declaratory and injunctive relief- and it immunizes Amace’s conduct along the way.
Finally, the majority’s attempt to cast aside Fortunato v. City of Coral Gables, 47 So.2d 321 (Fla.1950), violates the Florida Supreme Court’s express statement that it does not overrule precedent “sub silentio.” See Arsali v. Chase Home Finance LLC, 121 So.3d 511 (Fla.2013). It may well be that the Florida Supreme Court will move the law of this State to where the majority believes it should be, but it is beyond our jurisdiction to recede from that Court’s existing precedent.
III. CONCLUSION
For the reasons stated above as to Count I, I find that the City waived the issue of standing. Alternatively, I conclude that special damages were not required to be pled. Moreover, even if special damages were required, Detournay and Randol sufficiently alleged special damages. Lastly, I find that the trial court erred in ruling on Count II, which, as pled, was entirely dependent on Count I. Accordingly, I dissent from the majority’s decision and would reverse the order and final judgment on appeal.

. That statute states as follows:
86.021. Power to construe
Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

. During the first day and a half of trial, the parties attempted to reach a settlement agreement. On appeal, the Homeowners argue that the trial court erred in failing to enforce the alleged settlement agreement reached by the parties. I would find this argument without merit.

. Although not necessary to my conclusion on this point, I would note that the Homeowners’ argument that they were denied due process when the trial court considered the City's "surprise” renewed motion to dismiss without notice has merit.

. "The Florida Declaratory Judgment Act, chapter 86, Florida Statutes (2009), is remedial in nature and should be broadly construed.” Garcia, 99 So.3d at 544.

. In contrast, RNA did not allege special damages sufficient to maintain suit. The second amended complaint alleges that the RNA is a “homeowners association representing the interests of its members who are concerned with protecting and preserving the residential neighborhood in the area of and adjacent to the illegal private yacht basin.” Homeowners who do not live on the Mahi Waterway cannot argue that they suffer special damages resulting from Amace's activity. Had the issue not been waived, and if a declaratory judgment proceeding required special damages, I would have affirmed as to RNA.

. In relevant part, Count II states as follows:
If the court declares (in Count 1) that (1) the private yacht basin is operating contrary to the city's zoning regulations and (2) the city acted contrary to the requirements of its zoning regulations when it failed to close the illegal private yacht basin, plaintiffs request that the court grant permanent injunctive relief that would enjoin the operation of the private yacht basin which is the subject of this action.

. Specifically, the sole reference made by the City to Trianon in its Answer Brief is as follows: "As the court found, municipalities have discretion as to enforcement of its codes. See Trianon Park Condo. Assoc. v. City of Hialeah, 468 So.2d 912 (Fla.1985) (enforcement of law by regulatory officials such as building inspectors is discretionary).” (Answer Brief, p. 27). "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.” Tillman v. State, 471 So.2d 32, 35 (Fla.1985).

. The majority distinguishes the Florida Supreme Court's opinion in Fortunato v. City of Coral Gables, 47 So.2d 321 (Fla.1950), by stating that it pre-dated Trianon and did not consider the principle of separation of powers. In Boucher, however, the Court explained that in Fortunato the plaintiff "carefully and in thorough detail delineated special and peculiar damages to himself which resulted from the violation of the setback requirements by his next door neighbor,” which entitled him to proceed in equity. Boucher, 102 So.2d at 136. More significantly, Fortunato is still good law and the fact that it pre-dates Trianon is of no moment because the Florida Supreme Court does not overrule itself sub silentio. Arsali v. Chase Home Fin. LLC, 121 So.3d 511 (Fla.2013); see Puryear v. State, 810 So.2d 901 (Fla.2002).