528 So.2d 947 (1988)
Susan W. SHARPE, Appellant,
v.
Eugene T. CALABRESE, et al., Appellees.
No. 87-1972.
District Court of Appeal of Florida, Fifth District.
July 14, 1988.
*948 Seymour Benson, Orlando, for appellant.
Shawn G. Rader of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees.
PER CURIAM.
A marriage dissolution action between a wife, appellant Susan W. Sharpe, and a husband, Gene E. Sharpe, was bifurcated with the marriage being dissolved on August 19, 1985, and the other issues being left for later determination. By operation of law under section 689.15, Florida Statutes, upon dissolution of their marriage, the ex-husband and ex-wife became tenants in common of a lot in Dawn Estates, formerly jointly owned. In a marital settlement agreement, the wife agreed to convey her interest in the marital home in Wingfield North to the husband and the husband agreed to pay the wife $50,000 in five payments of $10,000 each and to provide the wife a house not more than $100,000 in value. The wife performed by conveying her interest in the Wingfield lot to the husband who apparently sold, or agreed to sell, it to a third person named David M. Pomerance.[1] The ex-husband failed to perform his covenants[2] under the marital settlement agreement, and as a result the ex-wife recovered a money judgment against the ex-husband for $110,000 (representing $100,000 damages for failure to provide a house and $10,000 for the first payment on the $50,000). On October 8, 1986, this money judgment was duly recorded in the proper public records.[3] The ex-wife also filed an action against the ex-husband to partition the Dawn Estates lot which partition action was consolidated with the pending dissolution action. After a partition sale of the Dawn Estates lot was ordered, upon motion of the ex-wife, the court ordered that, in the event the ex-wife was a successful bidder at the partition sale, rather than make a cash deposit at the sale, the ex-wife, as judgment creditor, *949 could give the husband credit against the money judgment for sums due him from the ex-wife's bid at the partition sale.[4] On December 23, 1986, David M. Pomerance reconveyed all of his interest in the Wingfield lot to the ex-husband who, on December 26, 1986, conveyed the Wingfield lot to appellees Eugene T. Calabrese and Denise T. Calabrese. On January 6, 1987, with a bid of $1.00, the ex-wife purchased the Dawn Estates lot at the partition sale.
Appellant, the ex-wife, as judgment creditor, filed this action against the Calabreses to foreclose her judgment lien against the Wingfield lot.[5] The Calabreses' affirmative defense was to the effect that (1) the Dawn Estates lot purchased by the judgment creditor for $1.00 at the partition sale was worth $270,000,[6] (2) even though she did not use her money judgment as a set-off in bidding at the partition sale, she waived her right to foreclose her judgment lien against the Wingfield lot by obtaining court permission to use her money judgment as a set-off in bidding at the partition sale of the Dawn Estates lot, and (3) because the judgment creditor so used her money judgment to obtain her ex-husband's interest in the Dawn Estates lot for so little, she was estopped from foreclosing her judgment lien against the Wingfield lot. Based on the same facts, the Calabreses also counterclaimed for a declaratory decree that the ex-wife's money judgment was satisfied and for a mandatory injunction requiring her to execute a formal satisfaction of her judgment.
Both sides moved for summary judgment. The trial court granted summary judgment for the Calabreses, adjudicating that their title was free and clear of any lien of the money judgment because
the Court is of the opinion that it would be inequitable and unconscionable to allow Mrs. Sharpe to profit from the legal morass which ensued and was largely the creature of her own making. Furthermore, she received all that she might have reasonably expected to and was entitled to receive from Mr. Sharpe under the [marital settlement] Agreement and the litigation that ensued from it.
The judgment creditor appeals. We reverse.
There is no "legal morass"  this is a simple case. The ex-wife has a recorded money judgment which, by operation of law, attached and became a lien against the judgment debtor's interest in the Wingfield lot before that lot was conveyed by the judgment debtor to the Calabreses.
There were no dealings between the ex-wife (judgment creditor) and the Calabreses that could possibly give rise to any waiver or estoppel against the judgment creditor and in favor of the Calabreses as subsequent purchasers of the Wingfield lot. The Calabreses have no basis or standing to collaterally attack the money judgment or to have it declared satisfied or to have the Wingfield lot released from its lien.
If the judgment debtor had an interest in the Wingfield lot at the time a certified copy of the judgment was recorded on October 8, 1986, the lien of the judgment *950 attached to his interest at that time.[7] The judgment lien also attached to any interest the judgment debtor received from David M. Pomerance when the deed between those parties was executed on December 23, 1986 (see note 1 herein). In all events, the lien of the money judgment constituted a recorded lien against the Wingfield lot when the judgment debtor conveyed that lot to the Calabreses on December 26, 1986, which of course, was before the partition sale of the Dawn Estates lot on January 6, 1987. It would have made no difference had the Calabreses acquired the Wingfield lot subject to the judgment lien after the partition sale of the Dawn Estates lot because neither the judgment creditor's judicial permission in the partition action to bid credit against the judgment indebtedness at the partition sale of the Dawn Estates lot nor the judgment creditor's purchase of the Dawn Estates lot at the partition sale satisfied the judgment or constituted any basis in law or equity to release the lien of the judgment against the Wingfield lot. As an absolute matter of law, the recorded judgment gave the Calabreses constructive notice of the judgment lien and also gave them the opportunity that the law provides as adequate for subsequent purchasers to protect themselves from the purchase of land which is subject to prior conveyances, liens, or encumbrances.[8]
The ex-wife's judgment is prima facie valid and has never been directly or properly collaterally attacked by the judgment debtor or anyone else with proper standing to attack it. Whatever may be the equities, if any, in favor of the ex-husband arising from the ex-wife's acquisition of his interest in the Dawn Estates lot for a nominal bid at the partition sale, those equities do not enure to the Calabreses as purchasers of the Wingfield lot. Likewise, the fact that the ex-wife may have received "all that she [or anyone else] might have reasonably expected to [or] was entitled to receive from Mr. Sharpe under the [marital settlement] Agreement and the litigation that ensued from it" (quote from final judgment herein) is, legally, a matter of concern only to the parties in the domestic relations action and any judge properly considering that issue in that case; it constitutes no equity against the ex-wife, as judgment creditor or in favor of the Calabreses, as subsequent purchasers of the Wingfield lot which was subject to the lien of the recorded judgment against the Calabreses' grantor. The Calabreses may have a claim against their grantor, the judgment debtor, for breach of the warranties in his deed to them and, perhaps, the Calabreses have claims against others, if any, who may have assumed a duty to search the records and to ensure that the Calabreses received good title to the Wingfield lot. However, there is no basis in law or equity for a court to look at the facts behind a valid judgment and to refuse to accord the money judgment its lawful effect as a lien against land to which it has attached as provided by law. A duly entered and recorded money judgment must be accorded its legal effect until it is satisfied by payment (see § 55.141, Fla. Stat.) or the lien thereof expires as provided by law (see §§ 55.081 and 55.10, Fla. Stat.) or judicial relief from the judgment is properly granted a party or his legal representative for a reason recognized in law (see Fla.R.Civ.P. 1.540).
The facts alleged by the Calabreses do not constitute a legal basis, in law or equity, for a judicial cancellation of the judgment, nor a valid affirmative defense to the judgment creditor's action to foreclose her judgment lien on the Wingfield lot, nor grounds for a valid counterclaim in favor of the Calabreses and against the judgment creditor. There is no claim of any contact or communication between the Calabreses and the judgment creditor which in any way constitutes a waiver by the judgment creditor or which estops the judgment creditor from asserting her lien against the Wingfield lot.
*951 The summary final judgment below is reversed and the cause remanded with directions for the court to enter summary judgment in favor of the judgment creditor.
REVERSED and REMANDED.
SHARP, C.J., and COWART, J., concur.
DAUKSCH, J., concurs specially in conclusion only without opinion.
NOTES
[1] Strangely, the record fails to show whether the husband conveyed the legal title to the Wingfield lot to David M. Pomerance or entered into some contract for sale with him or otherwise. The parties appear to assume that the husband conveyed the title to David M. Pomerance. As it turns out, this is not decisive in this case.
[2] Of course, there may be other compelling considerations but this case well illustrates what can happen when one party to a bilateral executory contract performs without requiring simultaneous performance by the other party.
[3] See § 55.10(1), Fla. Stat.
[4] While there is nothing legally wrong about providing for crediting the judgment debtor ex-husband with sums due him from the ex-wife's purchase at the partition sale, the effect of this procedure is the focal point of the contention on this appeal. Rather than a partition action and sale and credit against the judgment, it would have been much simpler to merely have had the husband's undivided half interest in the Dawn Estates lot levied on and sold at sheriff's sale under execution on the money judgment. (See § 56.061, et seq., Fla. Stat.). Also of course, any funds due the ex-husband from the partition sale would have been subject to attachment by the ex-wife. (See §§ 77.01 and 77.03, Fla. Stat.).
[5] Again, while nothing is legally wrong with a separate action in equity, in the nature of a mortgage foreclosure action, to have property subject to the lien of a money judgment sold at judicial sale, the traditional method is by execution, levy, and sheriff's sale, which avoids placing the judgment creditor in the posture of requesting the assistance of a judge of a court of equity to enforce rights under a judgment awarded by a law court.
[6] An order dated April 22, 1986, in the domestic relations action finds that the Dawn Estates lot was subject to a mortgage for $181,035.02 plus interest and costs that was then in foreclosure.
[7] § 55.10(1), Fla. Stat.
[8] See §§ 28.222(2), 28.29, 55.10 and 695.01(1), Fla. Stat.