# Third District Court of Appeal

## State of Florida

Opinion filed June 18, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0335
Lower Tribunal No. 22-10100
_____

**Aquastar Holdings LLC,**
Appellant,

vs.

**Peckar & Abramson P.C.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

The Law Offices of Kristin Vivo, and Kristin Vivo, and Alicia Gale Windsor (Palm Beach), for appellant.

Peckar & Abramson, P.C., and Adam P. Handfinger, Freddy X. Munoz, Anne-Solenne Rolland, and Alexandra McKissick, for appellee.

Before LINDSEY, GORDO, and GOODEN, JJ.

LINDSEY, J.

Appellant Aquastar Holdings, LLC appeals a Final Judgment of Foreclosure in favor of Appellee Peckar & Abramson, P.C. On appeal, Aquastar argues that the trial court erred in granting summary judgment in favor of Peckar because Peckar's Mortgage was extinguished when Aquastar purchased the disputed Property at a May 2022 Sheriff's sale. Aquastar also argues that the trial court erred by granting attorney's fees to Peckar because a non-party to a contract who has not agreed to assume the contract is not bound by its terms. We agree and accordingly reverse in part.

## I. BACKGROUND

The underlying proceeding is a mortgage foreclosure action and concerns the priority of recorded instruments. However, this proceeding cannot be understood without discussion of a prior, separate breach of contract action that resulted in the May 2022 Sheriff's sale.

In the prior proceedings, Aquastar sued Avant Design Group, Inc. for breach of contract, obtained a money judgment, executed its judgment via a Sheriff's sale, and purchased the Property at that sale. In the underlying proceeding here, Peckar filed an action against Aquastar to foreclose a mortgage that Avant had given it on the same Property. We discuss each proceeding in turn.

2

**The Prior Proceeding: Execution of a Judgment Lien**

On December 7, 2020, Aquastar obtained a money judgment in the amount of $525,680 against Avant Design Group, Inc. ("Aquastar's Judgment"), in a separate breach of construction contract action.[1] Peckar represented Avant in that litigation. On January 22, 2021, Aquastar recorded a certified copy of Aquastar's Judgment at Book 32305, page 2288 ("Aquastar's Judgment Lien"). Avant then executed a promissory note and mortgage ("Peckar's Mortgage") in favor of Peckar against Avant's only asset, an office condominium (the "Property").[2] On January 26, 2021, Peckar recorded a certified copy of its note and mortgage at Book 32311, page 4017.

When Aquastar attempted to execute on its Judgment Lien on May 27, 2021, the Clerk of Court declined to issue a Writ of Execution because "[t]he language in the judgment does not address the let execution issue [sic] nor do[es] it give the interest rate." The trial court then amended Aquastar's Judgment by way of a handwritten notation to include the words "for which let execution issue" as well as the statutory interest rate, *nunc pro tunc*. On

---

[1] This Court affirmed the judgment in <u>Avant Design Group, Inc. v. Aquastar Holdings LLC</u>, 351 So. 3d 62 (Fla. 3d DCA 2022).

[2] Peckar's Mortgage purported to serve as security for Avant's unpaid fees for Peckar's legal services.

3

October 21, 2021, Aquastar recorded this amended judgment at Book 32807, page 1741.

Aquastar then executed on its Judgment Lien against Avant by way of a Sheriff's sale of the Property on May 25, 2022. Aquastar purchased all of Avant's "estate, right, title and interest" in the Property at the Sheriff's sale for $300.[3] The Sheriff's Deed entitled the holder to Avant's interest as of the date of sale.

**The Underlying Foreclosure Proceeding**

On June 3, 2022, Peckar filed the underlying foreclosure action against Aquastar. Peckar also sought attorney's fees pursuant to the terms of its Mortgage. Aquastar answered that its Judgment Lien had priority over Peckar's Mortgage and further contended it was not liable for attorneys' fees as a non-party to Peckar's Mortgage. It also counterclaimed for quiet title, declaratory judgment, and fraudulent transfer.

Both Peckar and Aquastar moved for summary judgment. After a hearing and supplementary briefing on lien priority, the trial court granted summary judgment in favor of Peckar, concluding that Aquastar purchased the property "subject to all liens of record", or alternatively that Peckar's Mortgage was superior to Aquastar's Judgment Lien because the Judgment

---

[3] It is undisputed that Aquastar purchased the Property subject to a senior mortgage owned by non-party TD Bank.

4

Lien was not legally enforceable until amended and re-recorded in October 2021, nine months after Peckar's Mortgage was recorded. It also awarded attorney's fees to Peckar "pursuant to the mortgage."

Aquastar timely appealed.

## II.   ANALYSIS

We review an order granting final summary judgment de novo. E.g. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). We review orders determining entitlement to attorney's fees and costs de novo, and those setting amount for an abuse of discretion. State Farm Mut. Auto. Ins. Co. v. Best Med. Treatments, Inc., 354 So. 3d 612, 613 (Fla. 3d DCA 2023).

On appeal, Aquastar claims that its Judgment Lien was superior to Peckar's Mortgage, and therefore it purchased title to the Property unencumbered by Peckar's Mortgage. Aquastar further asserts that it cannot be liable for contractual attorney's fees as it is not a party to the contract. Peckar raises several arguments in response. First, Peckar claims that Aquastar's Judgment was defective and therefore did not create a judgment lien senior to Peckar's Mortgage. Second, Peckar claims that the *nunc pro tunc* amendment of Aquastar's Judgment in October 2021 should not be treated as having been in effect since the date Aquastar's Judgment was rendered. Third, it argues that Aquastar took title at the Sheriff's sale

5

subject to Peckar's Mortgage because Aquastar did not foreclose that Mortgage first. Finally, Peckar argues that Aquastar took title at the Sheriff's sale subject to Peckar's Mortgage due to the language on the Sheriff's Deed and Notice of Sale. Peckar argues it is entitled to attorney's fees.

We agree with Aquastar on each of these issues. The recordation of Aquastar's Judgment on January 22, 2021, created a valid judgment lien that continued in existence until Aquastar purchased the Property at the Sheriff's sale in May 2022. Because the trial court's *nunc pro tunc* amendment to Aquastar's Judgment was merely a correction of a clerical error, it "related back" and took effect as of the date Aquastar's Judgment was originally rendered without affecting the priority of Aquastar's Judgment Lien. Thus, Peckar's Mortgage was extinguished when Aquastar purchased the Property at the Sheriff's sale because the purchaser at an execution sale takes title subject only to encumbrances existing at the time the underlying judgment was recorded. Encumbrances created after that time, such as Peckar's Mortgage, are extinguished by the sale. In other words, there was no mortgage for Peckar to foreclose when it filed its foreclosure action. The language on the Sheriff's Deed does not support Peckar's argument, while the language in a Sheriff's Notice of Sale does not affect the legal interests exchanged in a Sheriff's sale. Thus, the trial court erred in granting summary

6

judgment to Peckar on its foreclosure claim and Aquastar's counterclaim for quiet title.

### a. Creation of the Judgment Lien on January 22, 2021

The creation of liens on real property by money judgments is governed by § 55.10(1), Florida Statutes (2024):

> A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation, provided that the judgment, order, or decree contains the address of the person who has a lien as a result of such judgment, order, or decree or a separate affidavit is recorded simultaneously with the judgment, order, or decree stating the address of the person who has a lien as a result of such judgment, order, or decree.

See also Martinez v. Reyes, 405 So. 2d 468, 469 (Fla. 3d DCA 1981) ("In order to create a lien on real property, a certified copy of a judgment or decree must be recorded in the official records of the county where the property is located." (citations omitted)); In re Whelan, 325 B.R. 462, 463 (Bankr. M.D. Fla. 2005) ("Under Florida law, the impact of the recordation of a judgment on real property owned by the judgment debtor creates a judgment lien on the debtor's property, which grants the judgment creditor a secured status." (citing B.A. Lott, Inc. v. Padgett, 114 So. 2d 667, 668-69 (Fla. 1943))).

7

Here, Aquastar recorded a certified copy of Aquastar's Judgment with the Clerk of Court for Miami-Dade County on January 22, 2021, along with an affidavit providing Aquastar's address as required by the statute. It is undisputed that Avant owned the Property on that date and that the Property is in Miami-Dade County. Thus, Aquastar's Judgment became a secured judgment lien on the Property on that January 22, 2021.

"A valid money judgment which has been duly recorded and entered as a lien against land 'must be accorded its legal effect until it is satisfied by payment (see § 55.141, Fla. Stat.) or the lien thereof expires as provided by law (see §§ 55.081 and 55.10, Fla. Stat.) or judicial relief from judgment is properly granted a party or his legal representative for a reason recognized in law (see Fla. R. Civ. P. 1.540).'" Lamchick, Glucksman & Johnston, P.A. v. City Nat. Bank of Fla., 659 So. 2d 1118, 1120 (Fla. 3d DCA 1995) (quoting Sharpe v. Calabrese, 528 So. 2d 947, 950 (Fla. 5th DCA 1988)).

Peckar argues that the January 22 recordation of Aquastar's Judgment did not create a perfected lien because the statutory interest rate and the words "for which let execution issue" were omitted from the Judgment. We disagree. Compliance with the § 55.10(1) requirement to record a certified copy of a judgment and a valid address affidavit is all that is necessary to perfect a judgment lien on a judgment debtor's real property. See Sharpe, 528 So. 2d at 949-50 ("If the judgment debtor had an interest in the Wingfield

8

lot at the time a certified copy of the judgment was recorded on October 8, 1986, the lien of the judgment attached to his interest at that time."); see also DuBreuil v. Regnvall, 527 So. 2d 249, 249 (Fla. 3d DCA 1988) (explaining that the absence of the words "for which let execution issue" does not render a judgment nonfinal or void, but instead "effectively grant[s] the judgment debtor a stay of execution" until judgment is modified to include the language).

Priority among liens is governed by § 695.11, Florida Statutes: "The sequence of such official numbers shall determine the priority of recordation. An instrument bearing the lower number in the then-current series of numbers shall have priority over any instrument bearing a higher number in the same series." Thus, Aquastar's Judgment Lien had priority over Peckar's Mortgage because it bore a lower number in the record series.[4]

### b. *The* nunc pro tunc *amendment*

The trial court concluded that Aquastar's Judgment Lien was inferior to Peckar's Mortgage because "Aquastar did not have a legally enforceable lien on the property until October 21, 2021[.]" We disagree. The *nunc pro tunc* amendment "related back" and took effect as of December 7, 2020, the date Aquastar's Judgment was rendered, and accordingly did not affect the

---

[4] Aquastar's Judgment was recorded at Book 32305, page 2288. Peckar's note and mortgage were recorded at Book 32311, page 4017.

priority of Aquastar's Judgment Lien. See Boggs v. Wainwright, 223 So. 2d 316, 317 (Fla. 1969) ("That a court of record may, even after the term has expired, correct clerical mistakes in its own judgments and records, nunc pro tunc, and that such corrections generally relate back and take effect as of the date of the judgment, decree, order, writ, or other record so corrected, is well settled." (quoting R.R. Ricous & Sons Co. v. Merwin, 113 So. 745, 746 (1927))). Amendments adding the words "for which let execution issue" as well as the "post-judgment interest rate and the information pertinent to the judgment debtor" are not material and may be entered with *nunc pro tunc* effect. See Maxfly Aviation Inc. v. Cap. Airlines Ltd., 843 So. 2d 973, 975 (Fla. 4th DCA 2003) (citations omitted). Thus, the *nunc pro tunc* amendment of Aquastar's Judgment was a valid correction of a clerical error that did not affect the priority of Aquastar's Judgment Lien, which remained superior to Peckar's Mortgage.

### c. Encumbrances at sale

The trial court concluded that the Property was "sold subject to all liens of record" because "when a junior mortgagee is omitted as a party to the foreclosure of a senior mortgage, the lien of the junior mortgagee is unaffected by the judgment."

This was erroneous because when Aquastar executed Aquastar's Judgment Lien against Avant, that *was not a foreclosure proceeding*. In

mischaracterizing it as such, the trial court applied foreclosure caselaw that is inapplicable and failed to apply the execution caselaw that is applicable. As the purchaser at a Sheriff's execution sale, Aquastar took title subject only to encumbrances existing at the time it recorded Aquastar's Judgment, not encumbrances created after the recordation of its judgment, such as Peckar's Mortgage. See Mansfield v. Johnson, 40 So. 196, 200 (1906) ("It is said that the purchaser at an execution sale takes only the right, title, and interest which the execution debtor had, subject to equities existing at the time the judgment was recorded[.]"). This rule was reiterated in Young Land USA, Inc. v. Credo LLC, 278 So. 3d 776, 778 (Fla. 3d DCA 2019):

> Appellant asserts that its encumbrance was improvidently extinguished. "It is said that the purchaser at an execution sale takes only the right, title, and interest which the execution debtors had, subject to equities existing at the time the judgment was recorded." [Mansfield, 40 So. at 200]. Accordingly, it is well-established that "the title delivered pursuant to an execution sale of real property relates back to the date of recordation of the judgment upon which the sale was based." Klein v. Advance Mortg. Corp., 450 So. 2d 601, 601 (Fla. 4th DCA 1984) (citations omitted); see also Sperling v. United States, 994 So. 2d 1139, 1140 (Fla. 3d DCA 2008) ("[T]he title under [a] sheriff's deed 'relates back' to the priority of the recorded judgment that is the basis for execution and sale.").

> Here, the two certified judgments prompting the execution sales were recorded after the judgment debtor acquired title, and many years before

11

> appellant perfected any purported interest in the real property. . . .
>
> Accordingly, as both the reconveyance of the property back to the judgment debtor, following the recordation of mortgage, and the title derived from the execution sales, relating back to the date of the judgment liens, extinguished any other encumbrances on the property, we conclude the trial court correctly determined appellee is endowed with paramount title. Thus, we affirm.

Like the prevailing Appellee in Young Land USA, Aquastar is the holder of a title derived from an execution sale that relates back to the date of a judgment lien. Its purchase of that title at the Sheriff's sale extinguished all encumbrances on the Property inferior to the priority of Aquastar's Judgment Lien. Thus, it extinguished Peckar's Mortgage.

### d. *Sheriff's Deed and Notice of Sale*

Peckar next argues that because Aquastar's Sheriff's Deed specifies that the holder takes "all the estate, right, title, and interest which [Avant held] on the 25 day of May, A.D., 2022, or at any time afterwards" and Peckar's Mortgage was recorded prior to that sale date, the sale did not extinguish Peckar's Mortgage. However, the language on the Sheriff's Deed is boilerplate. It does not mention liens, liabilities, or claims by anyone other than Avant, instead stating that it conveys to Aquastar what it "can or should convey by virtue of said execution and the laws relating thereto." Thus, the language in the Sheriff's Deed does not support Peckar's position.

12

Peckar also points to the Notice of Sale, which states, "under and by virtue of a writ of execution issued in the above styled cause, I . . . have levied upon and will offer for sale subject to all liens of records, all the right, title, and interest of. . . Avant Design Group, Inc., the below described property."

While this language might suggest at first glance that the sale did not extinguish any liens, such a conclusion contradicts binding precedent. In McAlice v. Andersen, 403 So. 2d 563, 564 (Fla. 3d DCA 1981), a property "was sold at a sheriff's sale to enforce a judgment lien" for $600 to Appellant McAlice. "At the time of the sheriff's sale, appellees, the Andersen group, had initiated mortgage foreclosure proceedings against the property pursuant to a recorded $20,000.00 second mortgage which appellees had given Sapp subsequent to the judgment lien but prior to the execution of that judgment lien." Id. "After purchasing the property, McAlice filed a quiet title action against appellees seeking an adjudication that appellees' $20,000.00 mortgage was inferior and junior to the judgment lien upon which his purchase was based." Id. The trial court entered summary judgment against McAlice, but this Court reversed with directions to enter judgment in favor of McAlice. Id. at 564-65. This Court's reasoning is instructive here:

> Although appellees alleged several irregularities, they fail to point to any mistake or irregularity in the sale which actually prejudiced appellees . . . . We

13

reject appellees' argument that one such fatal irregularity or mistake was the Sheriff's announcement at the time of the sale that he was selling all right, title and interest of the judgment debtor Sapp as of the date of the sale rather than such interest of the judgment debtor as of the time the judgment became a lien upon the real property. In conducting an execution sale, the sheriff acts in a ministerial capacity, see, e. g., <u>Camp v. Moseley</u>, 2 Fla. 171 (1848), and makes no representations or warranties as to title. He is not charged with any affirmative duty of ascertaining the state of the title for the purpose of disclosing it to bidders. All that could pass by the sale was appellees' interest in the property, whatever that might be.

<u>Id.</u>

McAlice compels reversal. The Sheriff "makes no representations or warranties as to title" at a Sheriff's sale–the "interest of the judgment debtor as of the time the judgment became a lien upon the real property" passes to the purchaser despite a Sheriff's representation in a Notice of Sale that he is selling "all right, title and interest of the judgment debtor . . . . as of the date of the sale[.]" <u>Id.</u>; <u>see also</u> <u>Sperling v. United States</u>, 994 So. 2d 1139, 1140 (Fla. 3d DCA 2008) ("[T]he title under [a] sheriff's deed 'relates back' to the priority of the recorded judgment that is the basis for execution and sale.").

Pursuant to <u>Young Land USA</u>, <u>Sperling</u>, and <u>McAlice</u>, Aquastar, as the purchaser at the Sheriff's execution sale, took the "interest of the judgment debtor [Avant] as of the time the judgment became a lien upon the real property[,]" not Avant's liabilities as of the day of the sale. As explained

14

supra, Aquastar's Judgment Lien was perfected on January 22, 2021, before Peckar's Mortgage was recorded. The record establishes conclusively that Aquastar's title to the Property was based on a judgment recorded prior in time to Peckar's Mortgage, and therefore extinguished Peckar's Mortgage upon execution and purchase. See Slachter v. Abundio Inv. Co., 566 So. 2d 348, 349 (Fla. 3d DCA 1990) ("Abundio's motion for summary judgment, affidavit in support of motion, a copy of the sheriff's deed, the recorded judgment, and Slachter's mortgage demonstrated conclusively that Abundio's title was based on a judgment, recorded prior in time, to Slachter's mortgage lien. Since an earlier recorded judgment takes priority over a later recorded mortgage lien, and Slachter offered nothing in response indicating any genuine issue of material fact, the trial court properly entered final summary judgment.").

### e. Aquastar's counterclaims

The trial court also granted summary judgment for Peckar on Aquastar's counterclaims for quiet title, declaratory judgment, and fraudulent transfer. We affirm as to fraudulent transfer without elaboration and discuss the other counterclaims in turn.

Because Aquastar's purchase at the Sheriff's sale extinguished Peckar's Mortgage, Aquastar is entitled to summary judgment on its counterclaim for quiet title. See Young Land USA, 278 So. 3d at 778.

15

Given our holdings on the foreclosure and quiet title claims, there is no longer any "bona fide, actual, present, and practical need" for a declaration, so the counterclaim for declaratory judgment is dismissed. See State, Dept. of Envtl. Prot. v. Garcia, 99 So. 3d 539, 544-47 (Fla. 3d DCA 2011) ("[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which plaintiff can secure full, adequate and complete relief[.]" (citing McIntosh v. Harbour Club Villas Condo. Ass'n, 468 So. 2d 1075, 1081 (Fla. 3d DCA 1985) (Nesbitt, J., specially concurring))).

### f. Peckar's attorney's fee award

Finally, the trial court found that Peckar is entitled to an award of attorney's fees from Aquastar "pursuant to the mortgage." This was error because Aquastar is not a party to Peckar's Mortgage, and a non-party to a contract who has not agreed to assume the contract is not liable for attorney's fees pursuant to a term of that contract. See, e.g., Wells Fargo Bank Nat'l Ass'n for Morgan Stanley ABS Cap., MSAC 2007–HE3 v. Bird, 234 So. 3d 833, 834–35 n.1 (Fla. 5th DCA 2018) (noting that awarding contractual attorney's fees to or against non-parties to a contract "is clearly not permissible"); Fielder v. Weinstein Design Grp., Inc., 842 So. 2d 879, 880 (Fla. 4th DCA 2003) (holding that a non-party to a contract "can neither be required to pay nor can [it] recover prevailing party attorney's fees").

16

Additionally, Peckar is no longer the prevailing party. Accordingly, we reverse the trial court's order awarding fees and costs to Peckar.

## III. CONCLUSION

The trial court erred in finding that Aquastar purchased Avant's interest in the property subject to Peckar's Mortgage because a purchaser at an execution sale takes title subject only to liens that existed at the time the judgment executed upon was recorded. Thus, Aquastar's Judgment against Avant created a valid Judgment Lien when it was recorded on January 22, 2021; Aquastar's purchase of the Property pursuant to the execution of that Judgment Lien extinguished Peckar's Mortgage. Accordingly, we reverse the Final Judgment in favor of Peckar and remand for entry of summary judgment in favor of Aquastar on Peckar's foreclosure claim and Aquastar's counterclaim for quiet title. The trial court's order granting summary judgment in favor of Peckar on Aquastar's declaratory judgment counterclaim is reversed and remanded with instructions to dismiss. We affirm the trial court's order granting summary judgment in favor of Peckar on Aquastar's fraudulent transfer counterclaim. The award of attorney's fees to Peckar is reversed.

Reversed in part and remanded.